295 S.E.2d 719

**MASON COUNTY BOARD OF EDUCATION**

v.

**STATE SUPERINTENDENT OF SCHOOLS and Bright McCausland.**

**No. 15540.**

Supreme Court of Appeals of West Virginia.

July 13, 1982.

Concurring and Dissenting Opinion Sept. 8, 1982.

McHugh, J., concurred in part and dissented in part and filed opinion.

Davis & Nesius and John J. Nesius, Charleston, for appellant.

Charles Headley Damron, Point Pleasant, for appellees.

NEELY, Justice:

We granted this appeal in order to clarify the rules that apply to mitigation of damages in wrongful discharge cases. Appellee Bright McCausland was discharged from his position as a probationary school principal by the Mason County Board of Education on 1 September 1972. This case has been before the Court twice before, *Mason County Board of Education v. State Superintendent of Schools*, 160 W.Va. 348, 234 S.E.2d 321 (1977) and *Ma-*

son *County Board of Education v. State Superintendent of Schools,* 164 W.Va. 732, 274 S.E.2d 435 (1980). The first case was brought here by the Mason County Board of Education to appeal a Kanawha County Circuit Court decision that a county board of education lacks standing to seek judicial review of an adverse decision of the State Superintendent of Schools. We held that a board of education does have such standing and remanded the case.

After our remand the State Superintendent's decision was overturned by the Circuit Court of Kanawha County and Mr. McCausland then appealed that ruling to this Court. We reversed the Circuit Court of Kanawha County holding that Mr. McCausland's dismissal was illegal under § 5300(6)(a) of the *Policies, Rules and Regulations of the West Virginia Board of Education* and ordered Mr. McCausland reinstated to his position with back pay. Upon remand the circuit court ordered Mr. McCausland reinstated as principal of Hannan High School and awarded him $148,362.36 in back pay for the school years 1973–74 through 1980–81. It is from this order of the circuit court that the Mason County Board of Education now appeals.

The Mason County Board of Education asserts one frivolous assignment of error that we shall dispatch summarily. In the circuit court the board sought to re-litigate the issue of whether Mr. McCausland had been properly discharged after we had already decided that issue in the second *McCausland* case. Obviously, the circuit court was correct in foreclosing any further litigation about whether Mr. McCausland was properly discharged and about whether he should be reinstated as principal at Hannan High School pursuant to this Court's order.

Our final order in the second *McCausland* case contemplated reinstatement and a back pay award. Those matters are therefore now *res judicata,* and to that extent we affirm the judgment of the circuit court.

I

The issue of damages is newly before us. The Mason County Board of Education requests for a number of reasons that Mr. McCausland not receive a full back pay award. The appellants assert that Mr. McCausland was a probationary principal who was employed under a three year contract that would have expired in 1975. The board argues that Mr. McCausland's damages are limited at most to the number of years of service to which he would have been entitled under his employment contract.

Appellants evidently derive this conclusion from the rule in employment contracts that "[i]f the contract is for a final term ..., the employment thereunder expires with the term." 11 S. Williston, *Contracts* § 1017 [3d Ed. 1968]. The cited rule, however, is not applicable to employment contracts of teachers in this state. The unique protection granted teachers by Rule 5300 makes a distinction between their employment contracts and an ordinary employment contract under which the employee has neither a statutory right to renewal nor a right to due process hearings before termination of the contract. This Court has held that Rule 5300 accords certain due process rights even to probationary teachers and that failure to award continuing contract status to a probationary teacher for utterly arbitrary and capricious reasons is a violation of the administrative rules and regulations of the State Board of Education, *Leef v. Via,* 170 W.Va. 245, 293 S.E.2d 442 (1982); *Powell v. Brown,* 160 W.Va. 723, 238 S.E.2d 220 (1977). If Mr. McCausland had been accorded his rights under Rule 5300 of the *Policies, Rules and Regulations of the West Virginia Board of Education,* and had not been wrongfully discharged, he would likely have achieved tenured status and a continuing employment contract. Consequently, we find the board's argument that Mr. McCausland suffered no damage after the expiration date of his probationary contract to be without merit.

II

The primary issue that the board raises, and which we must now address for the first time in many years, concerns the obli-

gation of a wrongfully discharged employee to mitigate his or her damages by seeking and accepting comparable employment for which he or she is qualified during the pendency of litigation. The easiest rule for any court to follow, and the rule which we have followed in the past, is that when an employee is wrongfully discharged he or she is entitled to all back pay from the date of discharge to the date of reinstatement together with interest. Such an award is usually sufficiently generous to cover all actual damages as well as the cost of attorneys' fees. If all wrongful discharge cases were examples of willful, malicious, and deliberate violations of employee rights, equity might justify generous back pay awards without any obligation to mitigate.

Increasingly, however, our cases demonstrate a pattern of more exacting review of discharges. The law regarding both the due process rights of school personnel and the rights of school personnel under the administrative rules and regulations of the State Board has been changing rapidly in West Virginia over the past six years. This Court has followed the national law and attempted to establish orderly procedures by which the performance of school personnel can be upgraded and monitored, and has attempted to do so without generating the sense of insecurity induced if jobs can be forfeited without prior notice and an opportunity to bring performance up to standard.

Unfortunately, the more courts make an effort to protect school personnel and other public employees from arbitrary and capricious discharge, the further they enter a gray area in which there are few absolutely correct answers, and the task of a court becomes simply to exercise its judgment. In the days when courts limited their intrusion into public employee discharge cases to those instances where clear violations of well-established law occurred—as for example, when an employee was fired without any hearing, discriminated against because of race or sex, or transferred out of malice in direct contravention of a civil service statute—it was possible to accept with equanimity the proposition that the employee should receive an award that, in

effect, punishes the agency or other employer that is the wrongdoer. This equanimity is no longer appropriate because the standard of review is so much less strict; courts will now overturn a discharge if that discharge was too severe a sanction for even admittedly substandard behavior or if a government employer abused its discretion in discharging a particular employee. *Powell v. Brown, supra; Beverlin v. Lewis County Board of Education,* 158 W.Va. 1067, 216 S.E.2d 554 (1975).

Judicial recognition of the due process rights of government employees has exacerbated the problem since, while some due process rights in terms of notice and hearing are extremely well defined and easy to follow, others are enormously technical. Reversals of agency decisions are frequently made on the grounds that a technical violation unrelated to the merits of the case has occurred.

Furthermore, the contours of the law controlling government employer-employee relations are still developing, and it often occurs that government employers discharge an employee in reliance upon one interpretation of the law only to discover *ex post facto* when the interpretation changes that their actions have become illegal. The landmark case of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) is a perfect case in point. Before *Elrod,* all government employees except those serving under the Federal or State Civil Service were believed to serve entirely at the will and pleasure of the appointing authority. Thus the Sheriff of Cook County who discharged employees in the *Elrod* case did so under a perfectly valid interpretation of the law up until the time that *Elrod* was decided.

■ Consequently, while we hold that a wrongfully discharged employee is entitled to recover his actual loss from the wrongful act, we now reject the somewhat primitive rule measuring damages simply as the total of the employee's back pay from the date of discharge to the date of reinstatement, and adopt the rule prevailing in most jurisdictions contemplating a duty of the

employee to mitigate damages by seeking other employment.

Our conclusion concerning the viability of the doctrine of mitigation of damages in wrongful discharge cases was recently prefigured in *Burks v. McNeel*, 164 W.Va. 654, 264 S.E.2d 651 (1980) where we remanded a case in which a teacher had been discharged without full compliance with due process requirements. We directed the circuit court to determine the issue of back pay and stated that "[i]n making this determination the trial court should consider mitigation of damages." 164 W.Va. at 660, 264 S.E.2d at 654. Our conclusion that courts must consider mitigation of damages in cases of wrongful discharge should now come as no surprise.

The decision of this Court in this regard is instructed by our understanding of the severe financial problems that government at all levels is currently encountering. While a simple rule regarding damages may be easy for those administering the judicial system to apply, and may adequately recompense the injured party, its punitive effects are imprecise. The cost of the damage award is in fact not borne by the government agency that is required to pay the damage award from its budget so much as by the designated beneficiaries of the government service that that budget supports.

### III

Since we conclude that an employee who is wrongfully discharged has an obligation, at least in certain circumstances, to mitigate his or her damages, it is now incumbent upon us to begin to illuminate the rules that are applicable to the issue of mitigation of damages. A good point of entry in this regard is with the venerable *McCormick on Damages*, where the general rule is stated as follows:

> The plaintiff suing for wrongful discharge need only prove the amount he was to earn under the contract for the remainder of the term of employment, and the defendant has the burden of proving what the plaintiff did earn, or could by reasonable diligence have earned, in other employment during that period.
>
> . . . .
>
> If the plaintiff has actually secured other employment of whatever kind, the amount earned would be deducted from the total earnings which would have accrued under the contract with the defendant, in measuring damages, but, in ascertaining whether he could have secured other employment, the plaintiff will only be charged with what he could have earned in another position of the same grade, in the same line of work, and in the same locality.

C. McCormick, *Damages* §§ 159, 160 (1935). In *Martin v. Board of Education*, 120 W.Va. 621, 199 S.E. 887 (1938) this Court held in the syllabus:

> An employee, demanding damages for alleged breach of his contract of employment, may rest his case upon proof of a valid contract and its breach, the measure of his damages being the contract price of his services. Mitigation of damages is an affirmative defense, and its burden is entirely on the contract breaker. This burden is not sustained by showing that the injured party was offered employment, though similar to that contracted, unless at a place reasonably convenient to him. And earnings he actually received in dissimilar employment should not be credited on his contractual damages, unless the employment is shown to have been incompatible with his contractual service.

The principles enunciated by Professor McCormick and by this Court in *Martin* are well-accepted principles of contract law, and the authority supporting them is uniform and concrete.[1] We are therefore

---

**1.** [I]t is commonly said that on breach of contract by an employer, the employee is under a duty to use reasonable efforts to mitigate damages by seeking other employment. . . . . this recovery will not be diminished because he fails to engage in a business that is not of the same general character as that for which we contracted, or fails to accept work at a distant place though it is of the same general character.
11 S. Williston, *Contracts* § 1359 (3d ed. 1968). *See also* id. § 1358.

adopting the majority rule, with the exceptions regarding the term of employment of a teacher employed by the State, discussed *supra,* and adding that the employer is estopped from asserting the employee's duty to mitigate where the termination of employment was malicious, discussed *infra.*

## IV

The authorities have pointed out that "duty" in this context is an inaccurate mode of expression. 11 S. Williston, *Contracts* § 1359 (3rd Ed. 1968); 5 A. Corbin, *Contracts* § 1095 (1964). The employee is in fact under no affirmative "duty" to seek employment; he may seek it or not, at his pleasure. However, should employment similar to that contemplated by his breached contract be locally available to him, he will be charged, in mitigation of his damages, the amount of the salary he would have earned at that employment. More accurately, then, the "duty to mitigate" is a limitation on his recovery dictated by the local job market. Of course, if an employee is serious about maintaining his professional standing and experience, he or she will have personal incentives to take such a job, but he or she is under no obligation to do so. Although the term "duty" is not completely accurate, it is both convenient and universally accepted, and is an effective substitute for a more complex and involved articulation of the principle. With the qualification noted here, we therefore approve its use.

■ While the extent of the duty to mitigate damages is measured by what a wrongfully discharged employee could have earned in comparable employment in the same locality—a measure intimately connected with the local availability of work—actual wages received, regardless of their source, are always an offset to damages unless they were earned in a job entirely compatible with continued employment under the contract. "The discharge causes injury, but it also sets free valuable time for use in another service." Corbin, *Contracts* § 1095. Unless the employee can demonstrate that the wages he earned were not the product of the valuable time the wrongful discharge "set free" for other work, these actual wages will be deducted from a wrongfully discharged employee's back pay award. *Martin v. Board of Education,* 120 W.Va. 621, 199 S.E. 887 (1938) provides an example in this state of a "compatible" job, where a teacher took a night job supervising a federal adult education program. Since his assertion that the work would not have interfered with his teaching duties was not controverted, this Court held that those earnings were not to be considered in mitigation of damages.

■ In our exploration of the law of damage mitigation as it applies to wrongful discharges, we are particularly concerned with cases where there are either technical violations of procedural rights or discharges prompted by poor judgment. It goes without saying that in these cases the innocent constituency served by the government agency should not be punished by an unjustifiably generous award. On the other hand, in those cases where an employee has been wrongfully discharged out of malice, by which we mean that the discharging agency or official willfully and

---

In cases where a wrongfully discharged schoolteacher has brought an action for damages, the courts have often observed that the measure of damages is *prima facie* the contract price agreed upon for the teacher's services, such view evidently being taken when the breaching party has not successfully carried the burden of proving that the teacher obtained, or with reasonable diligence might have obtained, similar employment in order to mitigate damages.... Notwithstanding the teacher's duty to seek and accept similar employment ... it has been held that the teacher is not required to accept such employment when it is of a different or inferior kind or located in a different region.
22 A.L.R.3d 1047 § 2(a) (1968).

The damages that (an employee) can recover for a wrongful discharge ... are the total amount of the unpaid wages that were promised to him for his service, less the amount that he can earn by making reasonable effort to obtain similar service under another employer. It is not necessary for him to take any serious bodily or financial risks or to accept service of a kind that in itself is distinctly less desirable.
5 A. Corbin, *Contracts* § 1095 (1964).

deliberately violated the employee's rights under circumstances where the agency or individual knew or with reasonable diligence should have known of the employee's rights, then the employee is entitled to a flat back pay award. We consider the policy considerations against malicious discharge to outweigh the policy considerations that favor protection of the constituent class receiving government services, and this rule should operate to discourage malicious discharges.

## V

Inevitably the question will arise concerning the definition of a "position of the same grade, in the same line of work, and in the same locality." McCormick, *Damages, supra*. With regard to teachers and school administrators the only available work that is *exactly* comparable to the work from which they have been discharged, at least in the same locality, will obviously be in the same school system from which they were discharged. If we were to hold that teachers and school administrators have an obligation to mitigate their damages only if they can find work in education, we would effectively eliminate almost all obligation to mitigate damages.

■ Certainly, either teaching or being a school administrator involves a certain social status and essentially intellectual and administrative rather than physical or clerical labor. A wrongfully discharged teacher or administrator has no obligation to seek employment as a common laborer, clerk, taxi driver, or to accept any other job of a significantly lower status for which he or she is unsuited by education or training. However, teachers and school administrators are suited by education and training for numerous jobs outside of the school system that have working conditions and status comparable to positions in education. For example, it would not be unreasonable to expect a wrongfully discharged classroom teacher to accept employment as a training officer in the education department of a corporation.

■ While it is easy to determine the amount of offset where an employee has successfully secured employment, it is a far more difficult task to determine whether an employee's failure to mitigate damages was the result of a voluntary decision not to seek work or the result of the general unavailability of work of comparable status in the general locality where the person was discharged. While mitigation of damages is an affirmative defense that must be proved by the party that has breached the contract, nonetheless, the wrongfully discharged employee who has not secured employment must be prepared to demonstrate that he or she did not make a voluntary decision not to work, but rather used reasonable and diligent efforts to secure acceptable employment.

■ Finally, in those instances where an employee has secured work at the same salary or a higher salary than the one he or she was making at the time of discharge—so that effectively all damages are mitigated—the employee is still entitled to his or her reasonable attorneys' fees and the expenses of the litigation leading to his or her reinstatement. Previously these fees and expenses could be paid from the generous back pay award, and where there is such an award they should still be so paid. However, where mitigation has been so complete that the monetary award is nominal, these expenses must be allowed.

■ The judgment of the Circuit Court is partially affirmed on the basis of the *res judicata* effect of our previous holding. With respect to the measure of damages we reverse the judgment below. We are satisfied on the basis of the evidence presented to us in *Mason County Board of Education v. State Superintendent of Schools*, 165 W.Va. 732, 274 S.E.2d 435 (1981) that Mr. McCausland's discharge was not malicious, and remand this case to the Circuit Court of Kanawha County for an inquiry, consistent with this opinion, into Mr. McCausland's mitigation of his damages.

Affirmed in part, Reversed in part, and remanded.

McHUGH, Justice, concurring in part and dissenting in part:

This case has a long and tortuous history. It could be used in law school texts as

an example of painful judicial delay. I find myself in the peculiar position of sitting in judgment on a case in which I am an appellate judge and in which I also was a trial judge. My uncomfortable role as an appellate judge in this case is maintained with the acquiescence of the parties. The matter is further complicated because the history of this case reveals that I was reversed on two occasions as a trial judge by a majority of the brethren with whom I now sit. Few judges have the distinction of being so involved in such a legal proceeding.

With my prefacing comments setting the stage, my reasoning for concurring, in part, and dissenting, in part, may be more clear. I take no issue with the syllabus points. I believe they are sound law and will give excellent guidance in the future. My disagreement lies in remanding this case to the Circuit Court of Kanawha County. It is clear that Bright McCausland is entitled to be reinstated to his position with back pay. Only the amount remains in controversy. Because of the pe-culiar circumstances of this case, he should be paid the amount determined by the trial judge. Furthermore, my colleague on the trial bench inherited this case upon my movement to this Court. It is my desire that he not find this case "stuck to him" as it has been to me.

This case has been in the court system for eight years. I would put an end to it and affirm, *in toto*, the decision of the trial judge.

I am authorized to state that Justice McGRAW agrees with my conclusion that this matter should not be remanded to the Circuit Court of Kanawha County and Bright McCausland should be paid the amount of back pay determined by the trial judge.