62 F.3d 1414
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ram P. BHASIN, M.D., Plaintiff-Appellee,
v.
BLUEFIELD REGIONAL MEDICAL CENTER, INCORPORATED, a West
Virginia Corporation, Defendant-Appellant.
 No. 95-1094.
 United States Court of Appeals, Fourth Circuit.
 Argued July 13, 1995.
Decided Aug. 8, 1995.
 
 ARGUED: Isaac Norris Kantor, Sr., KATZ, KANTOR & PERKINS, Bluefield, WV, for Appellant.
 James Anthony McKowen, HUNT, LEES, FARRELL & KESSLER, Charleston, WV, for Appellee.
 ON BRIEF: Wayne L. Evans, KATZ, KANTOR & PERKINS, Bluefield, WV, for Appellant.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A jury awarded damages in favor of Plaintiff-Appellee Dr. Ram P. Bhasin on his breach of contract claim against Defendant-Appellant Bluefield Regional Medical Center, Inc. (BRMC). BRMC appeals from the district court's denial of its motions for judgment as a matter of law and for a new trial. BRMC also challenges several of the court's evidentiary rulings. We affirm.
 
 I.
 
 2
 On July 2, 1993, Dr. Bhasin filed a complaint against BRMC in the United States District Court for the Southern District of West Virginia alleging breach of contract, wrongful discharge, and a violation of 42 U.S.C. Sec. 2000e-2. Dr. Bhasin also sought punitive damages for BRMC's allegedly willful and wanton misconduct. On December 1, 1993, the court dismissed all of Dr. Bhasin's claims except his claim for breach of contract, which sought $312,000 in compensatory damages for back pay and benefits from September 22, 1992, through March 30, 1994. A jury trial began on September 7, 1994. On September 13, 1994, the jury returned a general verdict in favor of Dr. Bhasin in the amount of $156,662.40. He filed a motion to alter the award to include prejudgment interest, which the court denied on November 3, 1994. On December 9, 1994, the district court denied BRMC's motions for judgment as a matter of law and for a new trial.
 
 
 3
 The evidence at trial showed that BRMC and its predecessors employed Dr. Bhasin as an emergency room physician for approximately nineteen years. The parties stipulated that an unsigned contract dated April 1, 1992, governs this dispute. This contract covered the time period from April 1, 1992, until March 31, 1993, and contained a clause providing for automatic renewal for successive one-year terms unless either party gave written notice of non-renewal at least forty-five days before the end of the term.
 
 
 4
 BRMC hired Dr. Howard Sathre as an emergency room physician in August 1991. When BRMC promoted Dr. Sathre to medical director of the emergency room in March 1992, he became Dr. Bhasin's immediate supervisor. Dr. Bhasin, who is Indian, claimed that Dr. Sathre disliked him and, because of racial prejudice, arranged to have him fired. Dr. Bhasin testified that during a meeting on September 17, 1992, Dr. Sathre told him that all foreign doctors needed to leave the hospital and that he would have Dr. Bhasin fired. On September 22, 1992, BRMC's Vice President, Jay Valeyko, informed Dr. Bhasin that he would no longer be scheduled to work in the emergency room.
 
 
 5
 During the fall of 1992, Dr. Bhasin negotiated with BRMC in an attempt to resume his duties in BRMC's emergency room. On September 24, 1992, Dr. Bhasin wrote a letter to BRMC's medical staff setting forth his version of the events leading up to his removal from the work schedule and alleging that Dr. Sathre had referred to him as a "nigger" during their meeting on September 17. In December 1992, Dr. Bhasin received two letters from BRMC that addressed the conditions under which he could return to work. After further negotiations failed to yield a settlement, Dr. Bhasin received an official termination letter from BRMC on April 16, 1993, which claimed to be effective as of October 1, 1992.
 
 
 6
 BRMC introduced evidence that it terminated Dr. Bhasin for cause because he manipulated time records and stole asthma inhalers from the emergency room. BRMC also claimed that Dr. Bhasin was a disruptive influence in the emergency room. Dr. Bhasin argued that he was discharged because of racial prejudice and his refusal to overcharge patients. The parties agreed that Dr. Bhasin's medical competence did not contribute to BRMC's decision to terminate him.
 
 
 7
 BRMC also offered evidence that Dr. Bhasin did not mitigate his damages. Dr. Bhasin testified that on the advice of his attorney he made no attempt to mitigate his damages from October 1, 1992, until June 12, 1993, when he signed an agreement with Spectrum Emergency Care Services, Inc., to work in various hospitals. On June 25, 1993, Dr. Bhasin signed an agreement to work full-time at St. Luke's Hospital as a staff internist beginning no later than July 15, 1993. BRMC also produced evidence detailing how Dr. Bhasin could have made more money "moonlighting"--working shifts for a number of hospitals during gaps in their schedules--than he would have made at BRMC. Dr. Bhasin testified that he did not moonlight as much as he could have because he was establishing a medical practice with his wife.
 
 
 8
 BRMC also made several objections to the court's evidentiary rulings. BRMC filed a motion in limine seeking to exclude testimony on the racial slur incident and Dr. Sathre's alleged affair with an emergency room nurse. The court denied the motion as it related to the racial slur, excluded evidence of Dr. Sathre's affair from Dr. Bhasin's case-in-chief, and reserved ruling on other portions of the motion.
 
 
 9
 BRMC listed Dr. Bhasin as a witness for its case-in-chief, but the court limited BRMC's questions to the issue of mitigation because BRMC had already cross-examined him when he testified on his own behalf. The court also prevented BRMC's President, Eugene Pawlowski, from testifying about Dr. Bhasin's working relationship with Dr. Surrinder Chopra during the early 1980s because the events were too remote. However, the court allowed Dr. Bhasin to cross-examine Pawlowski about Dr. Sathre's alleged affair. The court also allowed Dr. Bhasin to call two rebuttal witnesses who testified that Dr. Sathre's affair caused tension in the emergency room.
 
 II.
 
 10
 We review de novo a district court's ruling on a motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Benesh v. Amphenol Corp. (In re Wildewood Litig.), 52 F.3d 499, 502 (4th Cir.1995). We view the evidence in the light most favorable to Dr. Bhasin to determine whether substantial evidence supported the jury's award. Id. We review a district court's ruling on a motion for a new trial under Rule 59(a) for abuse of discretion. Id.
 
 
 11
 BRMC claims that the evidence presented at trial did not support the jury's award of damages to Dr. Bhasin. BRMC primarily contends that the jury could not have awarded any compensatory damages because Dr. Bhasin failed to mitigate his damages. See Mason County Bd. of Educ. v. State Superintendent of Schs., 295 S.E.2d 719, 724 (W.Va.1982) ("[S]hould employment similar to that contemplated by the breached contract be locally available to him, he will be charged in mitigation of his damages the amount of the salary he would have earned at that employment.").[1] BRMC offered evidence at trial that Dr. Bhasin, through moonlighting, could have earned the entire amount he sought as a result of BRMC's breach. BRMC also showed that Dr. Bhasin did not attempt to find work between October 1, 1992, and June 12, 1993.
 
 
 12
 The jury, however, apparently took into account BRMC's mitigation evidence in awarding Dr. Bhasin approximately one-half of the damages he sought. We find that the jury reasonably could have found that BRMC's mitigation evidence did not reduce Dr. Bhasin's damages to zero. We note that BRMC's calculations assume that Dr. Bhasin could have worked every possible overtime shift at different hospitals, without showing that such shifts did not overlap. Dr. Bhasin also testified that his efforts to start a private practice with his wife limited the number of moonlighting shifts he could have worked. Moreover, the jury could have found that Dr. Bhasin did not have to mitigate his damages immediately upon BRMC's breach because the pending settlement negotiations led him to believe that he would be reinstated.
 
 
 13
 BRMC also contends that the jury could not have awarded any damages after April 1, 1993, because BRMC's termination of Dr. Bhasin on September 22, 1992, prevented his contract from renewing for a second year. We disagree. The contract provided that the parties could prevent automatic renewal only by written notice given within forty-five days of the end of the current term. BRMC did not notify Dr. Bhasin of his termination in writing until April 16, 1993. Therefore, we find that the jury reasonably could have awarded damages during the second year because BRMC failed to provide timely written notice of non-renewal as required by the contract.
 
 
 14
 BRMC next contends that the jury could not have awarded any damages after June 25, 1993, because Dr. Bhasin breached his contract with BRMC by signing an agreement to work full-time for another hospital.[2] The district court found it ironic that BRMC would raise this argument in light of its mitigation defense, which would have required Dr. Bhasin to moonlight as much as possible. We find that the jury reasonably could have awarded Dr. Bhasin damages despite his signing of a contract with another hospital.
 
 
 15
 Finally, BRMC contends that the jury could not have awarded any damages after July 2, 1993, because Dr. Bhasin's heart attack in April 1993 incapacitated him for at least twelve weeks and therefore terminated his contract.[3] BRMC, however, did not introduce any evidence establishing the exact date of the heart attack or how long Dr. Bhasin could not work. BRMC relied only on Dr. Bhasin's testimony that the heart attack occurred during the first or second week of April 1993, and did not introduce any other evidence, such as hospital records or a physician's testimony. We find that the jury reasonably could have found that BRMC's evidence did not establish that Dr. Bhasin's incapacity lasted long enough to terminate his contract.
 
 
 16
 We thus reject BRMC's arguments that Dr. Bhasin failed to mitigate his damages and that the jury could not have awarded damages for certain time periods. BRMC presented its mitigation evidence to the jury, and the jury found that BRMC was entitled to roughly one-half of the damages he sought. Because substantial evidence supported the jury's decision to accept BRMC's mitigation evidence only in part, we conclude that the district court properly denied BRMC's requests for post-trial relief.
 
 III.
 
 17
 BRMC also challenges various evidentiary rulings made by the district court. We review the district court's admission or exclusion of evidence for abuse of discretion. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1357 (4th Cir.1995). BRMC first contends that the court erred in preventing Pawlowski from testifying about Dr. Chopra's reasons for leaving BRMC's emergency room during the early 1980s. BRMC argues that it should have been allowed to question Pawlowski about Dr. Chopra because Dr. Bhasin had testified that he had positive working relationships with all of his emergency room coworkers during his tenure at BRMC.
 
 
 18
 The district court ruled that the proffered testimony regarding Dr. Chopra would have been more prejudicial than probative under Rule 403 of the Federal Rules of Evidence because events of the early 1980s were too remote from Dr. Bhasin's discharge in 1992. The district court also noted that Pawlowski did not have first-hand knowledge of the doctors' working relationships and that BRMC could have called Dr. Bhasin's co-workers to testify about their working relationships with Dr. Bhasin. The court suggested that BRMC proffer testimony on more recent conflicts, but BRMC declined to do so. Because we agree that the working relationship between Dr. Bhasin and Dr. Chopra was too remote and that BRMC had other opportunities to rebut Dr. Bhasin's testimony, we conclude that the district court did not abuse its discretion in excluding the testimony about Dr. Chopra.
 
 
 19
 BRMC next contends that the district court, during BRMC's casein-chief, improperly restricted the direct examination of Dr. Bhasin to the issue of mitigation. BRMC argues that it had intended to question Dr. Bhasin about his working relationships at BRMC and his purported theft of emergency room supplies. BRMC concedes that it made a strategic decision not to question Dr. Bhasin on these subjects until after he had testified during his case-in-chief and BRMC had called its own witnesses. Nonetheless, BRMC complains that the court's ruling surprised BRMC and that it had no reason to anticipate that the court would limit its questioning of Dr. Bhasin.
 
 
 20
 Rule 611(a) of the Federal Rules of Evidence allows courts to "exercise reasonable control over the mode and order of interrogating witnesses." The district court stated that BRMC had the opportunity to cross-examine Dr. Bhasin thoroughly when he testified during his case-in-chief. The court reasoned that its ruling ensured that the evidence presented would not be repetitive or consume too much time, and that Dr. Bhasin would be protected from harassment. Given the broad discretion of district courts to control the mode and order of interrogating witnesses, and given the fact that BRMC had ample opportunity to cross-examine Dr. Bhasin, we hold that the district court did not abuse its discretion in limiting BRMC's questioning of Dr. Bhasin during BRMC's case-in-chief.
 
 
 21
 BRMC also contends that the district court erred in denying BRMC's motion in limine to prevent Dr. Bhasin from offering evidence concerning the racial slur Dr. Sathre allegedly directed at Dr. Bhasin. BRMC complains that the slur was not relevant because Dr. Bhasin's wrongful discharge claim alleging discrimination had been dismissed. BRMC also argues that, even if probative, the use of the term "nigger" was highly prejudicial. The district court ruled that because Dr. Bhasin argued that Dr. Sathre's racial animosity toward Dr. Bhasin motivated BRMC's breach of contract, the racial slur was essential to his theory of the case and was therefore substantially more probative than prejudicial under Rule 403. We find that the district court did not abuse its discretion in admitting the evidence because the racial slur was relevant to Dr. Bhasin's breach of contract claim and was not unduly prejudicial.
 
 
 22
 Finally, BRMC contends that the district court should not have allowed Dr. Bhasin to cross-examine Pawlowski or to introduce two rebuttal witnesses regarding Dr. Sathre's alleged affair with an emergency room nurse. The court had granted BRMC's motion in limine to exclude such evidence from Dr. Bhasin's case-in-chief but had allowed him to rebut BRMC's defense theory that Dr. Bhasin was terminated in part because he had caused tension among the emergency room staff following Dr. Sathre's promotion. Dr. Bhasin cross-examined Pawlowski and introduced evidence to show that Dr. Sathre's affair caused the tension. The court found that the evidence was relevant and that it neither inflamed the passions and prejudice of the jury nor affected BRMC's substantial rights within the meaning of Rule 103 of the Federal Rules of Evidence.
 
 
 23
 BRMC argues that Pawlowski should not have been cross-examined on the affair because the issue of tension in the emergency room had not been raised on direct. See Fed.R.Evid. 611(b). During direct, however, Pawlowski testified about the factors that he had considered when he was deciding whether to terminate Dr. Bhasin, including complaints from the emergency room. Furthermore, throughout the trial BRMC claimed that it had terminated Dr. Bhasin in part because he had caused unacceptable turmoil in the emergency room. Therefore, we find that the district court did not abuse its discretion in allowing Dr. Bhasin to cross-examine Pawlowski about Dr. Sathre's affair and to introduce rebuttal witnesses.
 
 IV.
 
 24
 For the foregoing reasons, we affirm the district court's denial of BRMC's motions for judgment as a matter of law and for a new trial.
 
 AFFIRMED
 
 
 [1]
 The parties agree that West Virginia law applies to Dr. Bhasin's breach of contract claim
 
 
 [2]
 The contract prohibited Dr. Bhasin from providing medical services outside BRMC except in emergencies or with advance written consent by BRMC
 
 
 [3]
 The contract provided for automatic termination upon Dr. Bhasin's incapacity for at least twelve consecutive weeks