549 S.E.2d 662

**Barbara L. SEYMOUR, Plaintiff Below, Appellant,**

v.

**PENDLETON COMMUNITY CARE and Michael Judy, Defendants Below, Appellees**

No. 28461.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 2001.

Decided Feb. 23, 2001.

Concurring and Dissenting Opinion of Justice Davis July 6, 2001.

Dissenting Opinion of Justice Maynard July 6, 2001.

Concurring Opinion of Justice Starcher July 11, 2001.

---

Harley O. Staggers, Jr., Esq., Andrea J. Bucklew, Esq., Staggers & Staggers, Keyser, West Virginia, Attorneys for Appellant.

Ancil G. Ramey, Esq., Christopher L. Slaughter, Esq., Thomas S. Kleeh, Esq., Steptoe & Johnson, Charleston, West Virginia, Attorneys for Appellees.

PER CURIAM.

The Circuit Court of Pendleton County, in this retaliatory discharge action, reduced a jury verdict in favor of the appellant, Barbara L. Seymour, from $526,000 to $172,235.92. In reducing the verdict, the circuit court concluded that the evidence failed to show that the appellant had properly attempted to mitigate her damages and that the absence of mitigation justified reduction of the jury's verdict. On appeal, Barbara L. Seymour claims that the trial court abused its discretion in making the reduction, and that the evidence supported the jury's conclusion that she properly attempted to mitigate her damages.

## I.

### FACTS

On March 23, 1998, Michael Judy, manager of Pendleton Community Care, fired the appellant, Barbara L. Seymour, who was Pendleton Community Care's office manager, for

insubordinate behavior and for refusal to adhere to management policies. Following the discharge, Ms. Seymour brought the present retaliatory discharge action against Mr. Judy and Pendleton Community Care. Among other things, she claimed that her termination was in retaliation for her complaining about the falsification and lack of records which Pendleton Community Care was required under the law to maintain.

In December 1999, the case was tried in the Circuit Court of Pendleton County. In the course of the trial, Ms. Seymour described the circumstances surrounding her discharge and testified about her efforts made to obtain employment after her discharge. In describing the activities which occurred before her discharge, she indicated that her relationship with Mr. Judy began deteriorating after she began making complaints about the keeping of various records and activities which in her view were inaccurate and which potentially violated the law. She described various meetings which were terminated without her being allowed to discuss her position. She also testified about a rather draconian improvement plan which was imposed upon her which restricted her job performance and which reduced her responsibilities. Her testimony showed that her relationship with Mr. Judy progressively deteriorated until she was terminated. In describing her efforts to obtain employment after she was terminated, she said:

I've watched the paper, and I've kept my eye on things—and kept an eye for what's out there, and kept my eyes open. I just haven't gone to apply. And there wasn't—you know, everyone here knows the situation in Pendleton County, what job opportunities. And where am I going to find a position like I had that I worked years to get to, at the salary that I was at, gone overnight, without forcing me to go somewhere, to Harrisonburg or—even there, I've looked, and you just don't walk into another job overnight, not like that.

Q. Now, have you been able to make any money at all since you were terminated?

A. I started doing stained glass at home, and I've sold a piece, and I have some orders. It amounts to less than a hundred dollars ($100) so far.

Q. Is that something you plan on doing?

A. Unless I can find other work.

Elsewhere in the record, although Ms. Seymour indicated that she had not actually applied for a job at any place, she did indicate that she had gone to "Job Placement." Finally, she suggested that the jury might understand her difficulty in attempting to find a job. She stated: "[W]here am I going to find a position like I had that I worked so many years to get to, at the salary that I was at, ... without forcing me to go somewhere ...." She also said: "[Y]ou just don't walk into another job overnight, not like that."

The appellees, during the presentation of their case, introduced evidence that a number of jobs which they claimed were similar to Ms. Seymour's job, were advertised in the *Pendleton Times,* a local newspaper, during the approximately 20 months between the date of Ms. Seymour's discharge and the date of trial.

At the conclusion of the evidence in the case, a charge was given to the jury, including an instruction on Ms. Seymour's duty to mitigate her damages by seeking comparable employment after her discharge, provided the jury found that her discharge was not malicious.[1] Further, during closing argu-

---

1. The charge stated:
   The amount of lost earnings awarded must be reduced by an amount equal to any income the plaintiff has received or could have received from other employment or business following her termination. Additionally, if you believe that this case involves either a technical violation of procedural rights or a discharge prompted by poor judgment, then Barbara Seymour has a duty to mitigate her damages by accepting similar employment if it is available in the local area, and the actual wages received, or the wages Barbara Seymour could have received at the comparable employment where it is locally available, will be deducted from any back pay award; however, the burden is upon Pendleton Community Care to raise the issue of mitigation. The Defendants may satisfy their burden only if they establish that: 1) There were substantially equivalent positions which were available; and 2) the claimant failed to use reasonable care and diligence in seeking such positions.

ment in the case, it appears counsel for the appellees did argue that Ms. Seymour had failed to mitigate her damages.[2]

After deliberating, the jury returned a verdict in favor of Ms. Seymour and determined that she was entitled to $70,000 for past lost earnings, $125,000 for future lost earnings, $30,000 for emotional damages, $500 for medical damages, and $500 for future medical damages. Additionally, the jury determined that Ms. Seymour was entitled to punitive damages in the amount of $100,000 from the appellee, Michael Judy, and $200,000 in punitive damages from the appellee, Pendleton Community Care.

After the jury returned its verdict, the appellees moved for a judgment notwithstanding the verdict, and on May 15, 2000, the circuit court granted that motion insofar as it related to Ms. Seymour's claims for back pay and for future lost earnings. The reduction in back pay, which is not in issue in the present case, was based on the fact that the evidence showed Ms. Seymour's lost back wages amounted, at most, to $42,921, rather than the $70,000 found by the jury. The reduction, or more properly the trial court's elimination, of the jury's $125,000 award for future lost wages was based on the court's conclusion that Ms. Seymour had failed to introduce evidence showing that she had made reasonable efforts to mitigate her damages. In addition to reducing the past and future lost earnings awards, the court also reduced the jury's punitive damage award from a total of $300,000 to $98, 314.92. The court concluded that this reduction was appropriate to keep the punitive damages proportional to the total award of compensatory damages as reduced.

In the present appeal, Ms. Seymour principally claims that the evidence supports the jury's verdict in this case and that the court erred in substituting its judgment for the judgment of the jury on this question. She also claims that the reduction in punitive damages, which was based in substantial part on the reduction of the future lost earnings award, was unjustified.

## II.

### STANDARD OF REVIEW

This Court has stated in Syllabus Point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), that: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*"

■ Further, in cases such as the present one, where the issue is whether the verdict of the jury is supported by evidence presented during trial, the Court has held:

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

On the other hand, if you believe that Mrs. Seymour was discharged out of malice, by which I mean that Pendleton Community Care willfully and deliberately violated Mrs. Seymour's rights under circumstances where Pendleton Community Care knew, or with reasonable diligence should have known, of Mrs. Seymour's rights to be free from retaliatory discharge then Barbara Seymour is entitled to a flat back pay award by which I mean back pay from the date of discharge to the date of trial together with interest.

2. The exact nature of the argument is unclear since the record presented to this Court on the point is inadequate. The record does indicate:

Ladies and gentlemen, you heard evidence regarding damages. The plaintiff said in her testimony that she hasn't applied for a single job (inaudible). There have been many jobs advertised in the paper and you heard about them. There shouldn't be any damage (inaudible), and there certainly shouldn't be any punitive damages. The defendants did not (inaudible).

When you go back to the jury room, ladies and gentlemen, and you're asked, "Did the plaintiff prove (inaudible,)" please answer, "No, (inaudible.)"

Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984).

## III.

## DISCUSSION

As indicated above, the principal issue in the present case is whether the trial court properly reduced the jury's future lost earnings award of $125,000, based upon the court's conclusion that Ms. Seymour had failed to attempt to mitigate her damages by seeking employment.

■ This Court has recognized that where a wrongful discharge is not malicious, the discharged employee has a duty to mitigate damages. Specifically, the Court has stated:

> Unless a wrongful discharge is malicious, the wrongfully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could have received at comparable employment where it is locally available, will be deducted from any back pay award; however, the burden of raising the issue of mitigation is on the employer.

Syllabus Point 2, *Mason County Board of Education v. State Superintendent of Schools*, 170 W.Va. 632, 295 S.E.2d 719 (1982); see, also, Syllabus Point 3 of *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990). On the other hand, where a discharge is malicious, the employer is estopped from asserting the employee's duty to mitigate. *Mason County Board of Education v. State Superintendent of Schools, supra.*

In the present case, the jury was, in effect, instructed that if it found that Ms. Seymour was discharged in what amounted to an absence of malice, she had a duty to mitigate provided the appellees met the burden of establishing that positions substantially equivalent to that which she lost were available. On the other hand, it appears that the jury was, in effect, instructed that if she was discharged out of malice, there was no such duty to mitigate. In giving these instructions, it appears that the court tracked what is the law in West Virginia. Further, the court instructed the jury that "[a]n act ... is 'maliciously' done, only if prompted or accompanied by ill will, or spite, or grudge ...."

In returning its verdict, the jury specifically made findings which suggested that it found sufficient evidenced to support a finding of malice or something in the nature of malice. The jury answered "yes" for both the appellee Michael Judy and the appellee Pendleton Community Care to the question: "Do you find by a preponderance of the evidence that the conduct of either or both of the Defendants was oppressive, willful, wanton, malicious, reckless, or with criminal indifference to their civil obligations to Barbara Seymour?" [3] Later, the court found that there was sufficient evidence before the jury for the jury to conclude that the appellees had acted with "malice, or wanton, willful, or reckless conduct or criminal indifference." [4]

---

**3.** The jury verdict, in relevant part, stated:

*VERDICT FORM*

NO. *1* Do you find that Barbara Seymour has proved by a preponderance of the evidence that the following were motivated in part to discharge Mrs. Seymour, because she brought to their attention the violations of public policy; recognized in OSHA regulations and/or CLIA regulations?

Michael Judy
  YES ___✓___  NO _____

Pendleton Community Care
  YES ___✓___  NO _____

* * *

NO. *3* Do you find by a preponderance of the evidence that the conduct of either or both of the Defendants was oppressive, willful, wanton, malicious, reckless or with criminal indifference to their civil obligations to Barbara Seymour?

Michael Judy
  YES ___✓___  NO _____

Pendleton Community Care
  YES ___✓___  NO _____

* * *

**4.** The court addressed this point in the context of punitive damages. In the final order in the case,

■ This Court, like the circuit court, believes that there was sufficient evidence to support a jury conclusion that the appellees acted with "malice, or wanton, willful, or reckless conduct or criminal indifference." The Court further believes that an inference which may be reasonably drawn from this is that the conduct of the appellees was sufficiently malicious, under the principles set forth in *Mason County Board of Education v. State Superintendent of Schools, supra*, to alleviate Ms. Seymour of the duty of mitigating by seeking new employment, even if comparable employment was available.

■ Apart from all this, this Court concludes there was evidence before it from which the jury could have concluded that Ms. Seymour had made a reasonable effort to mitigate her damages.

■ In the body of *Mason County Board of Education v. State Superintendent of Schools, supra*, the Court stated that:

> While mitigation of damages is an affirmative defense that must be proved by the party that has breached the contract, nonetheless, the wrongfully discharged employee who has not secured employment must be prepared to demonstrate that he or she did not make a voluntary decision not to work, but rather used reasonable and diligent efforts to secure acceptable employment.

170 W.Va. at 638, 295 S.E.2d at 725–26. It thus appears that the process of showing mitigation entails showing two things: (1) that the injured employee did not make a voluntary decision not to work; and (2) that the employee used "reasonable and diligent efforts to secure acceptable employment."

Ms. Seymour, in the present case, testified as to the efforts which she had made to obtain employment. She specifically stated that she had watched the paper and that she had kept her "eye on things." She also stated that she had looked for a position in

Harrisonburg, Virginia, that she had gone to "Job Placement," and that she had started a stained glass business which she planned to continue, "[u]nless I can find other work." This testimony suggests that she did not make a "voluntary decision not to work." Additionally, this evidence, when construed in the light most favorable to Ms. Seymour, as is required by Syllabus Point 5 of *Orr v. Crowder, supra*, supports the conclusion that there was a sufficient factual basis for the jury to conclude that Ms. Seymour had, in fact, "used reasonable and diligent efforts to secure acceptable employment," or that she had, in fact, attempted to mitigate her damages.

The Court notes that an additional issue raised in the present case is the question of whether the trial judge should have reduced the punitive damages award. The justification advanced by the trial court for making the reduction in the award was that there had been a reduction in the future lost earnings award and that the reduction in punitive damages was appropriate to keep the punitive damages award proportional.

In view of the fact that the Court has concluded that the trial court improperly reduced the future lost earnings award, the Court also believes that the reduction in punitive damages was improper.

For the reasons stated, the judgment of the Circuit Court of Pendleton County is reversed, and this case is remanded with directions that the circuit court restore the $125,000 for future lost earnings which the jury awarded the appellant, and additionally restore the punitive damages to the amount originally awarded by the jury.

Reversed and remanded with directions.

DAVIS, Justice, concurring, in part, and dissenting, in part.

(Filed July 6, 2001)

This Court has steadfastly held that verdicts made by a jury are to remain, for the

---

the court stated that: "[p]unitive damages are appropriate in cases where a Defendant acts with 'gross fraud, malice, or wanton, willful, or reckless conduct or criminal indifference....'" La-

ter in the same order, the court stated: "The Court finds that there was appropriate evidence before the jury to justify an award of punitive damages."

most part, undisturbed by the court in which they sit. "Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption." Syl. pt. 1, *Addair v. Majestic Petroleum Co.*, 160 W.Va. 105, 232 S.E.2d 821 (1977).[1] For this reason, I concur with the Court's decision in this case that the circuit court erred by reducing the jury's punitive damages award when the evidence sufficiently supported such an award. Therefore, I agree with the majority's ultimate decision to reverse and remand this case for further proceedings to reinstate the jury's verdict in this regard.

I do not agree, though, with my brethren's subsequent determination that Ms. Seymour attempted to mitigate her damages. First, such a conclusion is simply unnecessary to the Court's decision of this case. It is true that a plaintiff in a wrongful discharge action is required to mitigate his/her damages arising therefrom by seeking other employment. However, the employee's mitigation duty is obviated when a judge or jury concludes that the employer acted maliciously in wrongfully discharging said employee:

> Unless a wrongful discharge is malicious, the wrongfully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could

have received at comparable employment where it is locally available, will be deducted from any back pay award; however, the burden of raising the issue of mitigation is on the employer.

Syl. pt. 2, *Mason County Bd. of Educ. v. State Superintendent of Schs.*, 170 W.Va. 632, 295 S.E.2d 719 (1982) (emphasis added). In the case *sub judice*, such a finding was, in fact, made as the jury's award of punitive damages was based upon a finding of malice or other wrongful conduct equivalent thereto.[2] Thus, the malice with which the defendants acted in wrongfully discharging Ms. Seymour obviated her duty to mitigate her damages and renders the Court's discussion thereof unnecessary to its ultimate decision of this case.

Moreover, I disagree with the majority's determination that Ms. Seymour did, in fact, attempt to mitigate her damages. Such a finding is just plain wrong. On the contrary, the record evidence before this Court requires the opposite conclusion, *i.e.*, that Ms. Seymour's efforts did not constitute the mitigation required of a plaintiff employee in a wrongful discharge case who seeks an award of back pay. In the *Mason County* case, we explained *vis-a-vis* mitigation that "the wrongfully discharged employee who has not secured employment must be prepared to demonstrate that he or she did not make a voluntary decision not to work, but rather used reasonable and diligent efforts to secure acceptable employment." 170 W.Va. at 638, 295 S.E.2d at 725–26.[3]

---

1. *See also* Syl. pt. 2, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963) (" 'When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it.' Point 4, Syllabus, *Laslo v. Griffith*, 143 W.Va. 469[, 102 S.E.2d 894 (1958)]."). *But see* Syl. pt. 2, *Keiffer v. Queen*, 155 W.Va. 868, 189 S.E.2d 842 (1972) (" 'A verdict of a jury will be set aside where the amount thereof is such that, when considered in the light of the proof, it is clearly shown that the jury was misled by a mistaken view of the case.' Syllabus, Point 3, *Raines v. Faulkner*, 131 W.Va. 10[, 48 S.E.2d 393 (1947)].").

2. *See generally* Syl. pt. 4, *Harless v. First Nat'l Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d

692 (1982) (" 'Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong.' Syllabus Point 1, *O'Brien v. Snodgrass*, 123 W.Va. 483, 16 S.E.2d 621 (1941).").

3. *Accord* Syl. pt. 4, *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990) ("Once a claimant establishes a prima facie case of [employment] discrimination and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant. The defendant may satisfy his burden only if he establishes that: *(1) there were substantially equivalent positions which were available; and*

Here, even if the resolution of the instant appeal required a finding of mitigation, which, given the jury's finding of malice, it does not, there is absolutely no evidence that such mitigation occurred. As the majority plainly points out in its statement of facts, Ms. Seymour, herself, testified that she failed to take any affirmative steps to find employment comparable to her prior position: "I've watched the paper, and I've kept my eye on things—and kept an eye for what's out there, and kept my eyes open. I just haven't gone to apply." Maj. Op., 549 S.E.2d at 664. Given the previously stated requirement that a wrongfully discharged employee must use "reasonable and diligent efforts" to obtain replacement employment, *Mason County,* 170 W.Va. at 638, 295 S.E.2d at 726, and Ms. Seymour's admitted failure to do so, the majority's determination to the contrary blatantly ignores the evidentiary record upon which such a conclusion is based. With this result, I cannot and do not agree.

Accordingly, for the foregoing reasons, I respectfully concur, in part, and dissent, in part.

MAYNARD, Justice, dissenting.

(Filed July 6, 2001)

I would affirm the circuit court's order which reduced the appellant's jury verdict from $526,000 to $172,235.92. The circuit court's elimination of the jury's $125,000 award for future lost wages was based on the circuit court's accurate conclusion that the appellant had failed to show that she had made reasonable efforts to mitigate her damages. Also, the circuit court properly reduced punitive damages from $300,000 to $98,314.92 in light of the fact that a $300,000 award was simply unreasonable and outrageous under the specific facts of this case. Accordingly, I dissent.

STARCHER, Justice, concurring.

(Filed July 11, 2001)

I concur with the majority opinion, and with Justice Davis's separate reasoning that

*(2) the claimant failed to use reasonable care and diligence in seeking such positions."* (emphasis

explains why the plaintiff in the instant case did not have a "duty to mitigate" and why the determinations of the jury should be respected. For the following reasons, I go a step further and extend the "respect for the jury" reasoning to the issue of mitigation—which of course is a classic jury question.

The defendant was represented by able counsel at trial. Assuming *arguendo* that mitigation was an issue, the defendant had the burden of proving the plaintiff's failure to mitigate. The defendant's primary evidence on this issue was in the form of several newspaper advertisements that showed arguably similar regional job openings. According to the briefs (the record is not complete), when the plaintiff testified and was cross-examined, the defense could have confronted the plaintiff with those advertisements and questioned her about them—but this was not done; instead, the defendant apparently followed the strategy of waiting until it presented its defense, and then introducing the advertisements as evidence.

Was the defendant then required to retake the stand and explain on rebuttal with respect to each such advertisement why she did not apply for that job?

No, not if she chose to stand silent and take her chances on how the jury viewed that evidence. Moreover, presumably the defendant could have called the plaintiff to the stand and questioned her about the advertisements, as part of its own case, to show that she had not mitigated.

This Court is not going to change the settled rules of employment law by allowing employers to present job advertisements to a jury—without even showing that the employee knew of the advertisements—and then, based on the advertisements, arguing that the employee didn't mitigate as a matter of law because she didn't apply for those jobs.

When a jury concludes that an employment law plaintiff was doing nothing to seek comparable work, the plaintiff will pay the price.

added)).

But when, as in the instant case, six members of the community conclude, upon proper instructions from the Court and despite the able efforts of the defendant to persuade the jury otherwise, that a plaintiff who was badly mistreated by a defendant in fact made reasonable efforts to find a new job—then the jury has the right to make an award to the plaintiff that this Court will sustain.