482 S.E.2d 210

**James R. STAFFORD, Plaintiff Below, Appellee,**

v.

**ROCKY HOLLOW COAL COMPANY, a West Virginia Corporation; Rawl Sales & Processing Company, a West Virginia Corporation; A.T. Massey Company, a Virginia Corporation; and Larry Robinette, Defendants Below, Appellants.**

No. 23158.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1996.

Decided Dec. 16, 1996.

Marvin W. Masters, Richard A. Monahan, Masters & Taylor Charleston and H. Truman Chafin, Williamson, for plaintiff.

Mark A. Carter, Donna C. Kelly, Smith, Heenan & Althen Charleston, for Rocky Hollow, Rawl Sales and Larry Robinette.

Charles M. Surber, Jr., Albert F. Sebok, Jackson & Kelly Charleston, for A.T. Massey.

Howard M. Persinger, Mullens, for Rawl Sales.

PER CURIAM: [1]

In this employment case, James Stafford, plaintiff below and appellee herein, instituted a civil action in the Circuit Court of Mingo County against Rocky Hollow Coal Company, Rawl Sales & Processing Company, A.T. Massey Company and Larry Robinette (hereinafter "appellants"),[2] alleging wrongful discharge and breach of an employment contract. Also contained in the complaint were allegations of conduct on the part of the appellants amounting to outrageous, malicious, reckless, willful and wanton conduct, entitling the appellee to punitive damages.

The parties proceeded to trial and a Mingo County jury returned a verdict in favor of the appellee and determined that (1) "A. T. Massey Coal Company dominates and controls Rawl Sales & Processing Company to an extent that Rawl Sales & Processing Company is a mere instrumentality of A.T. Massey Coal Company"; (2) the appellants discharged the appellee "for a reason that violates some substantial public policy" (the jury awarded the appellee lost wages up until trial in the amount of $160,500.00); (3) the appellants "intentionally or recklessly engaged in extreme and outrageous conduct against [the appellee] that caused him to suffer severe emotional distress" (the jury

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. During the period that the appellee was employed at Rocky Hollow Coal Company (hereinafter "Rocky Hollow"), A.T. Massey Coal Corporation (hereinafter "A. T. Massey") was the parent corporation of Rawl Sales and Processing Company (hereinafter "Rawl Sales"); Rawl Sales was the parent corporation of Rocky Hollow; and Larry Robinette was the president and superintendent of Rocky Hollow.

awarded the appellee $500,000.00 for this claim); and (4) the appellants offered the appellee "a contract for employment for the rest of his life" and that the appellants "breached the contract by terminating him" (the jury awarded appellee future lost wages in the amount of $1,225,000.00). The jury returned a verdict totaling $1,885,000.00 on October 13, 1994. The trial court did not submit the issue of punitive damages to the jury.

The only ground of error that this Court has consented to review is the admission of evidence at trial of prior bad acts in violation of Rule 404(b) of the West Virginia Rules of Evidence.[3] The appellee cross-appeals and assigns as error the circuit court's refusal to allow the issue of punitive damages to be considered by the jury.[4] Based on the circuit court's improper admission of evidence in violation of Rule 404(b), we reverse and remand the case for a new trial, and we reject the appellee's assertion that the circuit court should have permitted the jury to consider punitive damages based on the record presented.

## I.

## FACTS

The appellee was employed in various job capacities with Rawl Sales and Rocky Hollow from 1981 to the time that he was terminated in June 1988. The appellee's last job classification prior to his termination was chief electrician for Rocky Hollow. The events surrounding the appellee's termination are shrouded with conflict and confusion with the appellee contending that no reasons were given by Rocky Hollow at the time of his

termination. Rocky Hollow disputes that contention and took the position during the trial of this case that the appellee was terminated because of poor job performance principally related to electrical problems in the mine that impacted upon production levels. The confusion and conflict is compounded by the testimony of the appellee that he believed the real reason for his termination was that he was a "whistle blower," relating to revelations that he made during his tenure of employment with Rocky Hollow that Jade Energy, a contract miner that had a relationship with Rocky Hollow, was being cheated.[5]

From this conflict and conclusion emerged a civil action instituted by the appellee against the appellants.

This factual recitation is only important as a backdrop to the real issue on this appeal, which centers on testimony offered by the appellee through two witnesses who testified, over the appellant's objection to a series of prior bad acts of A.T. Massey and its subsidiaries.

Prior to the trial, the appellants filed a motion in limine to exclude all evidence of prior bad acts under W. Va. R. Evid. 404(b). The trial court deferred ruling on the motion until the issue was squarely presented through a witness called to testify concerning the prior bad acts. The appellee called as part of his case-in-chief, the president of A.T. Massey, Don Blankenship, pursuant to W. Va. R. Evid. 611(b)(1).[6] During examination of Mr. Blankenship and over the objection of the appellants, he was asked whether A.T. Massey had ever failed to pay its contract miners. Mr. Blankenship denied that A.T. Massey had ever cheated anyone or that it had not fulfilled with complete fidelity its

---

3. At the time that this Court granted the petition for appeal, we limited for appellate review the single issue of the admissibility of evidence of prior bad acts in violation of W. Va. R. Evid. 404(b).

4. Although the appellee did not directly appeal the court's failure to instruct the jury on the issue of punitive damages, he properly filed a cross-appeal pursuant to Rule 10(f) of the West Virginia Rules of Appellate Procedure, which specifically allows an appellee to file a cross assignment, notwithstanding the fact that the appellee did not file a separate petition for appeal within the statutory period for taking an appeal. W. Va. R.App. P. 10(f).

5. During the appellee's testimony, he offered additional reasons why he believed he was terminated; specifically, complaints that he made concerning safety violations and his refusal to discharge other employees without any justification.

6. W. Va. R. Evid. 611(b)(1) provides:

A party may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interest of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination.

contractual commitments. Finally, Mr. Blankenship was moved to exclaim that there was not a more credible company than A.T. Massey.[7]

The appellee then felt compelled to offer testimony to attempt to contradict the testimony of Mr. Blankenship. This was offered through two witnesses, Dorse Hatfield and Richard Abraham, both of whom testified as to a litany of prior bad acts committed by A.T. Massey against the witnesses individually and/or the companies with which they were associated. These prior bad acts consisted primarily of the failure to pay legitimate amounts owed by A.T. Massey. Dorse Hatfield testified that A.T. Massey's conduct forced him out of business, and Richard Abraham testified that A.T. Massey had the worst reputation in the coal industry. Both witnesses testified that A.T. Massey's conduct inspired them to file lawsuits against A.T. Massey.

It is within the context of the testimony of Messrs. Hatfield and Abraham that we center our attention to determine whether or not these prior bad acts were properly admissible under our Rule 404(b) analysis as formulated by *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 470, 419 S.E.2d 870, 883 (1992), *aff'd*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), and as modified in *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).[8]

## II.

## DISCUSSION

### A.

### *Standard of Review*

There are two interrelated standards of review which apply in this case.

"First, an interpretation of the West Virginia Rules of Evidence presents a question of law subject to de novo review. Second, a trial court's ruling on the admissibility of testimony is reviewed for an abuse of discretion, 'but to the extent the [circuit] court's ruling turns on an interpretation of a [West Virginia] Rule of Evidence our review is plenary.'" *State v. Sutphin*, 195 W.Va. 551, 560, 466 S.E.2d 402, 411 (quoting, in part, *Gentry v. Mangum*, 195 W.Va. 512, 518 & n. 4, 466 S.E.2d 171, 177 & n. 4 (1995) (citations omitted)). This Court will not disturb the evidentiary rulings of a trial court absent an abuse of discretion.

### B.

### *West Virginia Rule of Evidence 404(b)*

The core of the appellants' challenge to the admission of the evidence of prior bad acts was that the trial court permitted their admission over the appellants' objection, without performing the mandatory Rule 404(b) inquiry as to whether the evidence of prior bad acts satisfied all of the preconditions to admissibility announced in *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 470, 419 S.E.2d 870, 883 (1992), *aff'd* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), and *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). We agree and accordingly reverse and remand this case for further proceeding.

In *TXO*, we formulated the following standard of admissibility under W. Va. R. Evid. 404(b):

Protection against unfair prejudice from evidence admitted under Rule 404(b) of the

---

7. The following colloquy between Mr. Masters and Mr. Blankenship is of particular interest:
   Q What about other contractors? Have you ever—has Rawl and Massey paid for all the coal that you—under the—under the mining contract that you had?
   A The question's unanswerable, but if you're asking me if Rawl or any Massey subsidiary that I've ever been associated with, to my knowledge, has lived up completely to its agreements and paid properly under those agreements or paid beyond those agreements, we've always paid, you know, what we've agreed to pay.

   It's very difficult, unless you're familiar with the coal business, to understand that coal, like anything else, has varying qualities. And you recover more coal depending on the quality. So we have always fully lived up to our agreements. I don't think you'll find a more credible company than A.T. Massey Coal Company. MR. MASTERS: That's all.

8. *TXO* was also modified on other grounds by *Alkire v. First National Bank*, 197 W.Va. 122, 475 S.E.2d 122 (1996) (modifying *TXO* with regard to punitive damages).

*West Virginia Rules of Evidence* [1985] is provided by: (1) the requirement of Rule 404(b) that the evidence be offered for a proper purpose; (2) the relevancy requirement of Rule 402—as enforced through Rule 104(b); (3) the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and, (4) Rule 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. Syllabus Point 8, *TXO Prod. Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870. This standard was derived in its entirety from *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

■■■ We continued our allegiance to this standard in *State v. McGinnis*, where, in Syllabus Points 1 and 2, we synthesized the requirements for the admission of prior bad acts as authorized by W. Va. R. Evid. 404(b):

1. When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the [offering party] is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the [offering party] or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

2. Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its ad-

missibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the [party] committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the [party] was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syllabus Points 1 & 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).[9]

Although *McGinnis* was a criminal case, we noted that the requirements for Rule 404(b) apply equally to civil cases, one difference being that the risk of prejudice under Rule of Evidence 403 is not likely to be as great. *McGinnis*, 193 W.Va. at 154 n. 6, 455 S.E.2d at 523 n. 6.

With *TXO* and *McGinnis* to map our way, we perform the following Rule 404(b) analysis to measure whether the trial court properly admitted the prior bad acts through the testimony of Messrs. Hatfield and Abraham.

---

**9.** In *McGinnis*, we did not overrule previous precedent in the interpretation of Rule 404(b), but rather we discussed the Rule at length to give guidance to the circuit courts when considering evidence of prior bad acts. We did, however, modify the evidentiary standard by which to review the admissibility of evidence and held that

"preponderance of the evidence" is the proper standard, not "clear and convincing," as enunciated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). *See McGinnis*, 193 W.Va. at 157–59, 455 S.E.2d at 526–28. The remainder of the opinion clarified the application of Rule 404(b).

## C.

## *Did the Trial Court Properly Perform a Rule 404(b) Analysis?*

In reviewing the record to determine whether the circuit court followed the requirements under Rule 404(b), it is clear that the proper analysis was not performed.

The beginning point of any Rule 404(b) analysis is that the party offering the evidence of prior bad acts must first identify the specific and precise purpose for which the evidence is being offered. Syllabus Point 1, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994); Syllabus Point 8, *TXO Prod. Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 470, 419 S.E.2d 870, 883 (1992) *aff'd* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (quoting *Huddleston v. U.S.*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

The appellee properly satisfied this threshold requirement by informing the trial court that the testimony of Messrs. Hatfield and Abraham would: (1) show motive on the part of the defendants to fire the plaintiff; (2) reveal a pattern of illegal conduct on the part of the defendants; and (3) rebut the credibility of the corporations and their personnel/witnesses.

Once the threshold inquiry is satisfied, the *TXO–McGinnis* analysis begins in earnest:

*First:*

The trial court, after holding an *in camera* hearing, must be satisfied by a preponderance of the evidence that the acts or conduct identified in the threshold inquiry actually occurred. *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986); *State v. McGinnis*, 193 W.Va. at 158–59 & n. 16, 455 S.E.2d at 527–28 & n. 16 (1994) (overruling the standard set in *Dolin* for which a trial court must be

convinced that the prior bad acts occurred from "clear and convincing" to "preponderance of the evidence"). If the trial court does not find that the acts occurred by a preponderance of the evidence, then the evidence shall be excluded under Rule 404(b). Syllabus Point 2, *McGinnis*, 193 W.Va. 147, 455 S.E.2d 516. If a sufficient showing has been made, then the court moves to the next step.

*Analysis:*

At no time during the trial of this case on the record before us did the trial court make any inquiry to determine, by a preponderance of the evidence, whether or not the acts or conduct, identified at the threshold inquiry as to the specific and precise purposes for which the evidence was being offered, actually occurred. For all intents and purposes, the failure to conduct this inquiry is sufficient reason to have excluded all evidence of prior bad acts in their entirety. *See McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528. If no inquiry was conducted by the trial court, how could the trial court have made a finding by a preponderance of the evidence that the acts did in fact occur?

*Second:*

Once the trial court determines by a preponderance of the evidence that the prior bad acts did in fact occur, the trial court must conduct a relevancy analysis under Rules 401,[10] 402 [11] and 104(b) [12] of the West Virginia Rules of Evidence. Syllabus Point 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516; Syllabus Point 8, *TXO*, 187 W.Va. 457, 419 S.E.2d 870.

*Analysis:*

Once again, this record does not reveal that the trial court performed any relevancy analysis of the acts identified during the

**10.** Rule 401 defines "relevant evidence":

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**11.** W. Va. R. Evid. 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State

of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

**12.** W. Va. R. Evid. 104(b) provides:

(b) *Relevancy Conditioned on Fact.*—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

threshold inquiry.[13]  Again, the failure of the trial court to perform a relevancy analysis is yet another reason to have rejected the prior bad acts testimony of Messrs. Hatfield and Abraham.

*Third:*

The trial court must conduct a balancing test under W. Va. R. Evid. 403,[14] to ensure that the probative value of the testimony outweighs the danger of unfair prejudice. *McGinnis,* 193 W.Va. at 155–56, 455 S.E.2d at 524–25; *TXO,* 187 W.Va. at 470–71, 419 S.E.2d at 883–84; *Arnoldt v. Ashland Oil, Inc.,* 186 W.Va. 394, 412 S.E.2d 795 (1991)(indicating that the balancing necessary under Rule 403 must affirmatively appear on the record).  As we noted above, the risk of prejudice may not be as great in a civil case as in a criminal case, but is nonetheless a necessary and important consideration.[15]

*Analysis:*

Once again, the trial court made no analysis under Rule 403 to determine whether or not the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  Because the trial court made no determination of relevancy in the first instance, it could not have determined whether or not the probative value of the testimony is substantially outweighed by the danger of unfair prejudice.  Once again, the failure to perform a Rule 403 analysis is fatal to the admissibility of the testimony of Messrs. Hatfield and Abraham.

**13.** The entire issue of relevancy was at the crux of the appellants' objection to the admission of prior bad acts, because they contend none of these prior bad acts are related to conduct involving unlawful discharge.

**14.** W. Va. R. Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**15.** We noted in *Barlow v. Hester Indus.,* 198 W. Va. 118, 479 S.E.2d 628 (1996) that a circuit court's failure to balance the prejudicial harm against the probative value need not be reversed for further review "if the considerations germane to balancing probative versus prejudicial effect are readily apparent from the record." *Barlow,* 198 W. Va. 131, 479 S.E.2d 628, 641 (1996).

*Fourth:*

The trial court, following the analysis in the first through third steps, if satisfied as to the admissibility of the prior bad acts testimony, should, where requested, give the jury a limiting instruction at the time the evidence is offered explaining the reason for limiting the use of the evidence.  Syllabus Point 2, *McGinnis,* 193 W.Va. 147, 455 S.E.2d 516; *TXO,* 187 W.Va. at 470–71, 419 S.E.2d at 883–84; *State v. Dolin,* 176 W.Va. 688, 696, 347 S.E.2d 208, 216 (1986).

*Analysis:*

Obviously, because the trial court did not conduct any analysis within the first to third steps, there was no opportunity to request a limiting instruction, and none was given.[16]

It is obvious that the trial court abused its discretion when it failed to comply with the gate-keeping requirement for the admissibility of prior bad acts under W. Va. R. Evid. 404(b).  For this reason, we have no other alternative than to reverse the verdict and remand this matter for further proceedings.[17]

–III.

CROSS–ASSIGNMENT OF ERROR

*Punitive Damages*

■  The appellee cross-assigns error to the circuit court's refusal to permit the jury

However, the failure to address all the elements as required under Rule 404(b) resulted in a barren record without which appropriate appellate review is possible.

**16.** The following instruction was given by the trial court as part of the final charge to the jury:

17. Plaintiff has introduced testimony that certain witnesses have filed lawsuits against certain of the defendants.  The fact that these lawsuits are pending is no proof that the plaintiff has valid claims against the defendants.

Another instruction that would have explained the limiting nature of the testimony relating to prior bad acts was refused.

**17.** The appellee contends that the analysis we have articulated was not precisely formulated until *State v. McGinnis.*  This simply is not so. This analysis has been part of our jurisprudence since *TXO* in 1992, which was two years prior to the trial in this matter.

to consider the issues of punitive damages. The circuit court's refusal to submit the issues of punitive damages to the jury was a specific finding that the evidence was insufficient to sustain an award of punitive damages. Specifically, the trial court determined that there was no evidence of fraud, malice, oppression, or wanton, willful, or reckless conduct or civil indifference to civil obligations that would justify the jury assessing punitive damages as required in Syllabus Point 4 of *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895). *See also Alkire v. First Nat'l Bank*, 197 W.Va. 122, 129, 475 S.E.2d 122, 129 (1996).

Additionally, the trial court noted that there was no evidence of the appellants circulating false or malicious rumors about the appellee before or after his discharge, or evidence that the appellant engaged in a concerted action of harassment to induce the appellee to quit, or any evidence that the appellants actively interfered with the appellee's ability to find other employment, all of which were possible suggested standards of punitive damages in a wrongful discharge case as articulated in *Harless v. First National Bank*, 169 W.Va. 673, 692 n. 19, 289 S.E.2d 692, 703 n. 19 (1982).

We find no error in the trial court's refusal to submit the issue of punitive damages to the jury in the absence of any evidence that would sustain a punitive damage award.[18] Therefore, we affirm the circuit court's decision not to permit the jury to consider the question of punitive damages on this record.

### IV.

### CONCLUSION

The circuit court abused its discretion in admitting the prior bad acts testimony in violation of the substantive and procedural requirements of W. Va. R. Evid. 404(b), constituting reversible error requiring a reversal of the verdict. We therefore remand this case to the Circuit Court of Mingo County for a new trial.

Reversed and remanded.

---

**18.** The appellants also maintain that punitive damages would not be proper in this case because that award would be duplicative of the jury award of $500,000 for emotional distress, allowing double recovery. We stated in *Dzinglski v. Weirton Steel Corp.*, that the damages for the tort of outrage were basically punitive damages and it would be improper to recover two punitive damage awards based on the same action. *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994). We held:

In permitting recovery for emotional distress without proof of physical trauma when the distress arises out of the extreme and outrageous conduct intentionally caused by the defendant, damages awarded for the tort of outrageous conduct are essentially punitive damages. Therefore, in many cases emotional distress damages serve the policy of deterrence that also underlies punitive damages. Syllabus Point 8, *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994).