736 S.E.2d 338

The BURKE–PARSONS–BOWLBY COR-
PORATION, a West Virginia corpora-
tion; Stella–Jones U.S. Holding Corpo-
ration, a Delaware corporation; and
Stella–Jones, Inc., a foreign corporation;
Defendants Below, Petitioners

v.

Sandra D. RICE, Executrix of the Estate
of Jerold John Rice, Jr., Plaintiff
Below, Respondent.

No. 11–0183.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 5, 2012.

Decided Nov. 7, 2012.

Roger A. Wolfe, Esq., Jackson & Kelly, Charleston, WV, Kevin E. Hyde, PHV, Jonathan W. Oliff, PHV, Foley & Larnder, Jacksonville, FL, for the Petitioners.

Mark A. Atkinson, Esq., Paul L. Frampton, Jr., Esq., Atkinson & Polak, Charleston, WV, for the Respondent.

KETCHUM, Chief Justice:

This action alleging age discrimination is before this Court upon the appeal of The Burke–Parsons–Bowlby Corporation, Stella–Jones U.S. Holding Corporation and Stella–Jones, Inc. ("Burke–Parsons–Bowlby," "Stella–Jones" or "defendants") from the January 12, 2011, order of the Circuit Court of Jackson County denying the defendants' motion for a new trial. Finding that the defendants wrongfully terminated the employment of the plaintiff, Jerold John Rice, Jr. ("Rice"), based on his age, the jury returned a verdict for Rice in the amount of $2,133,991.00. That amount represents compensatory damages for lost back pay and front pay. The jury returned no damages for aggravation, inconvenience, humiliation, embarrassment or loss of dignity. The jury further determined that punitive damages were not warranted. In entering judgment on the verdict, the circuit court awarded Rice attorney fees, litigation costs and pre-judgment interest on the back pay award.

Denying that age played any role in Rice's termination, the defendants submit three assignments of error upon which they contend the motion for a new trial should have been granted. However, upon careful review of the record-appendix, the briefs and argument of the parties and the law relevant to this matter, this Court is of the opinion that the order denying the motion for a new trial should not be disturbed. Accordingly, the

January 12, 2011, order of the Circuit Court of Jackson County is affirmed.[1]

## I.

### Factual Background

In April 1985, Rice began working for Burke–Parsons–Bowlby as a staff accountant and credit manager. Burke–Parsons–Bowlby was headquartered in Ripley, West Virginia, and was in the business of producing pressure treated wood products, such as railroad ties and fence posts. In addition to its headquarter operations, the corporation operated five manufacturing plants. Rice was subsequently promoted to the assistant controller position and ultimately became the corporation's controller.

In 2008, Burke–Parsons–Bowlby was acquired by Stella–Jones, a Canadian corporation.[2] Although Rice was retained after the acquisition as controller at the Ripley headquarters, the record indicates that his responsibilities increased. At that time, his work largely involved completing the year-end audit of Burke–Parsons–Bowlby and reconciling matters relating to the transition to Stella–Jones, the acquisition having added more plants and employees to the business enterprise. Rice maintains that he worked in excess of 60 hours per week after the acquisition and gave up a number of vacation days. Initially, he reported to Doug Fox, a senior vice-president at Stella–Jones. A few months later, Rice's more immediate supervisor became Stella–Jones vice-president, Eric Vachon.

By letter dated December 12, 2008, Brian McManus, President and CEO of Stella–Jones, thanked Rice for his contribution to the company and confirmed that Rice's annual salary would be increased to $90,780.00, effective January 1, 2009. The record indicates that the salary increase was given to Rice by Doug Fox and approved by Eric Vachon. Soon after, Stella–Jones hired an assistant controller. By letter dated January 22, 2009, Vachon offered the position of assistant controller to Jeremy Stover. Rice had recommended hiring Stover prior to, and immediately after, the acquisition of Burke–Parsons–Bowlby by Stella–Jones. The letter from Vachon stated that Stover's start date would be February 16, 2009, and that he would report to Rice. Stover accepted the offer, and Vachon told Rice to teach Stover everything Rice knew.[3] Stover was 29 years old, and Rice was 47.

On the morning of March 12, 2009, a conference with top Stella–Jones executives was conducted at the West Virginia facility. Noting that the acquisition of Burke–Parsons–Bowlby had gone smoothly, the accounting department, including Rice, was complimented for its efforts during the previous year. The conference broke for lunch, and, upon return, Rice was informed by Vachon that his employment was terminated because the decision had been made to eliminate his position as controller. Vachon told Rice to vacate the premises that day. At trial, Rice described his termination as follows:

> A. When we met in the conference room with the dignitaries, Mr. Jones, as owner of the company, and I believe chairman of the board, addressed us, said that the merger had been a smooth transition, wanted to thank particularly the accounting department for their efforts during the year, not only in the integration of Stella–Jones and Burke–Parsons–Bowlby together, but also for the completion of the financial results in a timely and accurate manner.

> \*   \*   \*

> Q. John, I want you to tell the jury, when you came back from lunch, what happened.

---

1. Rice died in November 2010, and Sandra D. Rice, the Executrix of his Estate, was substituted as a party in this matter.

2. Stella–Jones, Inc., is a Canadian corporation, and Stella–Jones U.S. Holding Corporation is a Delaware Corporation which owns and operates entities in the United States.

3. Rice testified at trial:

> Q. When they brought in your assistant controller did the Canadian people tell you to do anything with him?
> A. I was instructed on a telephone call by Eric Vachon to teach [Stover] everything that I knew.

A. I experienced probably the low point of my career. I—I lost my job after 24 years. It was over in two minutes.

Q. Okay.

A. I was told by Eric Vachon that my job had been eliminated, and I was finished with the corporation.

\* \* \*

Q. When Mr. Vachon met with you for two minutes, did he talk about any problems in your personnel file?

A. Absolutely not.

\* \* \*

Q. Had they ever given you any written warnings?

A. To this day, I have not received any criticism good or bad.

Rice's termination occurred less than one year after the acquisition of Burke–Parsons–Bowlby by Stella–Jones. In contrast to Rice's 24 years of service, Stover had worked for Stella–Jones less than 30 days from his start date to the date of Rice's discharge on March 12, 2009. Rice had never received any warnings or reprimands concerning his work either before or after the Burke–Parsons–Bowlby acquisition. Moreover, neither Vachon, who terminated Rice, nor Fox, who had been consulted about the termination, had ever reviewed Rice's personnel file. Vachon acknowledged at trial that he had already decided to terminate Rice at the time he told Rice to teach Stover everything Rice knew. According to the defendants, however, Vachon of Stella–Jones had increasingly assumed a leadership role in the former Burke–Parsons–Bowlby finance department and saw no further need for Rice's position as controller. Thus, as stated by the defendants, Stover was retained as assistant controller, and there was no nexus between Rice's age and the elimination of his position.

Rice was offered a severance package, but he declined to accept it.

## II.

### Procedural Background

In April 2009, Rice filed a complaint in the Circuit Court of Jackson County against The Burke–Parsons–Bowlby Corporation, Stella–Jones U.S. Holding Corporation and Stella–Jones, Inc. The complaint alleged that the defendants "willfully, maliciously and unlawfully" terminated Rice's employment." The complaint was grounded upon an allegation of age discrimination in violation of The West Virginia Human Rights Act, *W.Va.Code*, 5–11–1 [1967], *et seq.*, and Rice sought compensatory damages (including back pay and front pay) and punitive damages.[4]

In December 2009, Vachon offered to reinstate Rice as a controller with Stella–Jones. The offer was sent to Rice by way of the parties' respective counsel. The position concerned a new chemical and energy division Stella–Jones was establishing. Rice did not accept the offer.

Several hearings were conducted as the action proceeded, including one on January 7, 2010, during which the circuit court denied the defendants' motion for summary judgment. In denying the motion, the circuit court stated that the action presented a number of trial-worthy issues, one of which concerned the defendants' proffered reason for Rice's termination. Trial began on May 12, 2010. Denying that Rice was discriminated against based on his age, the defendants asserted, through the testimony of Fox and Vachon, that Rice lacked the leadership skills and enthusiasm required of his position and that, consequently, Vachon had assumed his responsibilities. Rice, on the other hand, emphasized his length of service compared to that of Stover, his sound work record and the manner in which he was terminated.[5]

---

**4.** Pursuant to *W.Va.Code*, 5–11–9(1) [1998], of the Act, it is unlawful for any employer "to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required[.]" Under *W.Va.Code*, 5–11–3(h) [1998], the term "discriminate" includes failing or refusing to extend to a person equal opportunities because of

age. Under *W.Va.Code*, 5–11–3(k) [1998], the term "age" means the age of forty or above.

**5.** Indicating that his termination was completely unexpected, Rice testified at trial:

Q. Okay. So did you feel at the end of the first year after the takeover that things were going well?

On May 17, 2010, the jury returned a verdict in favor of Rice. The verdict form consisted of four questions. The first two questions asked whether the defendants wrongfully terminated Rice based on his age and, if so, whether the defendants acted maliciously. The jury answered yes to both questions. The verdict form noted that, if the jury found that the defendants acted maliciously, Rice would have been under no duty to mitigate his damages.

Question three, divided into three subparts, asked whether (1) the defendants made Rice an unconditional offer of reinstatement to the same or substantially equivalent job, (2) Rice failed to accept the offer of reinstatement and (3) nothing occurred between the defendants and Rice since the date of Rice's termination, that rendered further association between the parties offensive to Rice. The jury answered no to question three.

With regard to damages, the jury awarded Rice the following amounts: $142,659.00 in back pay; $1,991,332.00 in front pay; and $0 for aggravation, inconvenience, humiliation, embarrassment and loss of dignity for a total verdict of $2,133,991.00.

The final question on the verdict form asked whether the defendants' actions warranted an assessment of punitive damages. The jury answered no to that question.

On June 7, 2010, the circuit court entered judgment on the verdict and added $11,791.84 in pre-judgment interest on the back pay award. In a separate order entered on that date, the circuit court awarded Rice attorney fees in the amount of $117,235.00 and litigation costs in the amount of $20,324.16. Thereafter, the circuit court conducted a hearing on the defendants' motion for a new trial and denied the motion pursuant to the order entered on January 12, 2011. This appeal followed.

### III.

### Standard of Review

■ A motion for a new trial is authorized under Rule 59 of the West Virginia Rules of Civil Procedure. Appellate review of a ruling on a motion for a new trial is described in syllabus point 4 of *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976), as follows:

> Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 1, *Big Lots Stores, Inc. v. Arbogast*, 228 W.Va. 616, 723 S.E.2d 846 (2012); syl. pt. 2, *Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 680 S.E.2d 791 (2009). Subsequently, the specific components of appellate review in that regard were set forth by this Court in *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), and we so hold:

> [This Court reviews] the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

194 W.Va. at 104, 459 S.E.2d at 381. *In accord, Stevenson v. Independence Coal Company, Inc.*, 227 W.Va. 368, 374, 709 S.E.2d 723, 729 (2011). *See also, State ex rel. Meadows v. Stephens*, 207 W.Va. 341, 345, 532 S.E.2d 59, 63 (2000) (stating that a new trial should not be granted unless prejudicial error appears in the record or substantial justice has not been done).

### IV.

### Discussion

■ In addressing this action in the context of the Human Rights Act, this Court notes that the following principle expressed in syllabus point 3 of *Conaway v. Eastern Associated Coal Corporation*, 178 W.Va. 164,

---

A. I did. I thought, you know, one, I had ... received a raise from Stella–Jones, which is always a good sign; and two, my direct supervisor had thanked me for my efforts in handwriting on a pay raise letter. I took that to be a good sign.

358 S.E.2d 423 (1986), has been specifically applied to claims of age discrimination:

> In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following:
>
> (1) That the plaintiff is a member of a protected class.
>
> (2) That the employer made an adverse decision concerning the plaintiff.
>
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

Syl. pt. 2, *Johnson v. Killmer*, 219 W.Va. 320, 633 S.E.2d 265 (2006); syl. pt. 2, *Raber v. Eastern Associated Coal Corporation*, 188 W.Va. 288, 423 S.E.2d 897 (1992). In that regard, the defendants assert that, even if Rice established a *prima facie* case, the elimination of his position and the assumption of those duties by his supervisor, Vachon, constituted a legitimate, non-discriminatory reason for Rice's termination. Syl. pt. 3, *Tom's Convenient Food Mart, Inc. v. Human Rights Commission*, 206 W.Va. 611, 527 S.E.2d 155 (1999).

Seeking a new trial on that basis, the defendants set forth the following assignments of error: (1) the circuit court committed error in admitting evidence of an alleged prior bad act, *i.e.*, that Stella Jones subjected a third party, Robert Crane, to age discrimination in employment; (2) the circuit court committed error in admitting evidence of Rice's damages beyond the date of his offered reinstatement; and (3) the allowance by the circuit court of an unmitigated jury award of back pay and front pay unfairly constituted a *de facto* finding of punitive damages, without the due process constraints ordinarily associated with punitive damage awards. Those assignments of error will be discussed separately.

## A.

### Evidence Concerning Robert Crane

Robert Crane worked in excess of 35 years for J.H. Baxter & Company in the State of Washington. The company's products included the manufacturing of utility poles. In 2007, the company was purchased by Stella–Jones. Crane, a plant manager, was retained by Stella–Jones and initially reported to Doug Fox. On December 8, 2008, Buddy Downey, a vice-president under Fox at Stella–Jones, informed Crane that he was being given his retirement and that arrangements had been made for Crane to inform his co-workers that he was leaving. Crane, age 62, was replaced by a substantially younger employee. During his employment with J.H. Baxter & Company and Stella–Jones, no negative evaluations or disciplinary problems had ever occurred concerning Crane's work. In his deposition, Crane testified that, in a subsequent conversation with Doug Fox, Fox told Crane that he had been doing a good job but that "we wanted to make a change." Although Crane entered into a separation agreement with Stella–Jones, he filed a claim with the United States Equal Employment Opportunity Commission ("EEOC") alleging age discrimination resulting from forced retirement.

The defendants filed a motion in limine to exclude all references to Crane at trial. Following two hearings concerning that issue, however, the circuit court concluded that evidence concerning Crane would be admissible. The court's conclusion was set forth in a letter dated May 4, 2010, which stated, in part:

> The court is of the opinion that Robert Crane's evidence is admissible pursuant to Rule 404(b), WVREV, because 1) Crane claims he was a management employee and was discharged by Stella–Jones based on his age, in that he was 62 years old at the time of his termination, and he was replaced by a much younger man with no experience; 2) Crane's termination from employment was reasonably close in time with the termination of the Plaintiff in this case; and 3) like the Plaintiff in this case, Crane was a long time employee of a company acquired by Stella–Jones shortly before his termination. The probative value of such testimony is that it makes more likely the existence of discriminatory *animus* which Plaintiff Rice must prove in this case, that is, that the employer's decision to terminate Plaintiff's employment

was based on Plaintiff's age. * * * While it is argued that Crane "retired" from his employment, his deposition leaves no question but that he retired, only because Stella–Jones told him he had "no choice" but to do so.

In addition to W.Va. R. Evid. 404(b), the circuit court cited *McKenzie v. Carroll International Corporation*, 216 W.Va. 686, 610 S.E.2d 341 (2004), addressed *infra*.

Over renewed objection by the defendants, the circuit court permitted Crane's videotaped deposition testimony to be played at trial, thus allowing the jury to hear Crane testify that Stella–Jones discriminated against him because of his age. In conjunction with that evidence, a limiting instruction was given to the jury.[6]

■ The defendants contend that the circuit court committed reversible error in admitting the Crane testimony because (1) the court failed to make the required finding, prior to the admission of the testimony, that Crane was actually terminated because of his age and (2) the circumstances surrounding Crane leaving his employment with Stella–Jones were dissimilar to the termination of Rice through the elimination of Rice's position.

■ As to the first point, the defendants correctly cite *Stafford v. Rocky Hollow Coal Company*, 198 W.Va. 593, 482 S.E.2d 210 (1996), a wrongful discharge action, for the principle that, as a condition of admissibility under Rule 404(b), the trial court, itself, must find that the prior bad act actually occurred. The opinion in *Stafford* makes evident: "The trial court, after holding an *in camera* hearing, must be satisfied by a preponderance of the evidence that the acts or conduct identified in the threshold inquiry actually occurred." 198 W.Va. at 599, 482 S.E.2d at 216.

The defendants' assertion in that regard, however, lacks significance in the circum-

stances of this action. As stated above, the circuit court conducted two hearings prior to finding the Crane testimony admissible. On August 13, 2010, following the trial, the circuit court conducted another hearing and clarified that, if there was an oversight, the court would find by a preponderance of the evidence that Rice established under Rule 404(b) that Crane had been subjected to age discrimination. The circuit court stated:

> If there was an oversight on the question of whether the plaintiff had proved by a preponderance of the evidence that Mr. Crane had been subjected to age discrimination—I mean, you know, that is basic and fundamental that the plaintiff has the obligation. * * * And certainly, the circumstances were such that a presumption of discrimination would arise, and I'll make the finding now by preponderance of the evidence. * * *
>
> I thought that was the whole issue, whether or not that situation was sufficiently similar to what was alleged in this case in order to make it admissible. So, if I found that it was—well, whether it was stated expressly or not—I mean, if it wasn't age discrimination it would have absolutely no bearing in this case. So I am going to overrule that objection.

Thereafter, the circuit court entered an order on August 16, 2010, containing the following language: "After a review of the evidence, including reviewing the videotaped evidentiary deposition of Robert Crane, the court hereby finds and concludes that the acts alleged by Mr. Crane actually occurred."

Under these circumstances, this Court concludes that any omission by the circuit court concerning its pre-trial consideration of the Crane testimony was inadvertent and fails to constitute reversible error. Accordingly, the defendants' assertion of a Rule 404(b) violation is without merit.

---

**6.** The limiting instruction informed the jury that the Crane evidence was to be considered only in relation to the defendants' "motive or intent" in connection with Rice's claim of age discrimination. As Rule 404(b) states, in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Also without merit is the defendants' assertion that the factors surrounding Crane leaving his employment with Stella–Jones were dissimilar to the termination of Rice and that the Crane evidence was, therefore, inadmissible. The defendants point out, for example, that Crane's position was not eliminated and that, unlike Rice, he entered into a separation agreement. Rice, however, insists that the evidence was admissible under *McKenzie v. Carroll International Corporation, supra,* syllabus point 2 of which holds:

> In an action brought for employment discrimination, a plaintiff may call witnesses to testify specifically about any incident of employment discrimination that the witnesses believe the defendant perpetrated against them, so long as the testimony is relevant to the type of employment discrimination that the plaintiff has alleged.

As to relevancy, Rice emphasizes the similarities between his situation and that of Crane and asserts that the admission of the Crane testimony was within the sound discretion of the circuit court.

In view of the January 12, 2011, order denying the defendants' motion for a new trial, this Court finds Rice's assertion persuasive. Citing *McKenzie,* the order states:

> It is clear that the Court's prior ruling in this regard was proper, as there are a multitude of similarities between Mr. Crane's situation and that of Mr. Rice. Both Mr. Crane and Mr. Rice were over the age of forty (Mr. Crane was sixty-two at the time of his termination). Mr. Crane was a longtime employee of the company that was taken over by Stella–Jones in 2007–2008, just like Mr. Rice. Mr. Rice had been employed by Stella Jones and its predecessor for approximately twenty-four years. Mr. Crane had been employed by Stella–Jones and its predecessor for approximately thirty-five years. Neither Mr. Crane nor Mr. Rice had any negative evaluations or disciplinary problems whatsoever during their entire careers with their former employers and Stella Jones. Both Mr. Crane and Mr. Rice had received compliments regarding their performance shortly before their terminations. Doug Fox was involved in the decision to terminate Mr. Rice's employment. Mr. Crane was supervised by Mr. Fox and was informed of his termination by an individual who reported directly to Mr. Fox. * * * Mr. Rice's replacement was approximately eighteen years younger than him. Mr. Crane's replacement was approximately twenty-two years younger than him.

The order of January 12, 2011, is thorough and supported by the record. This Court finds no error with regard to the admission of evidence concerning Robert Crane.

### B.

### The Offer of Reinstatement

After the filing of this action, Eric Vachon, in December 2009, offered to reinstate Rice as a controller with Stella–Jones. Rice was offered the same salary and benefits he earned when he last worked for Stella–Jones, and he was offered assignment to the same office in Ripley, West Virginia. The position concerned a new chemical and energy division Stella–Jones was establishing as a result of its acquisition of a company known as Tangent Rail.[7] Rice's proposed starting date was February 1, 2010. The offer of reinstatement, in letter form, was sent to Rice by way of the parties' respective counsel, and the letter stated that the offer had no connection to the current litigation. The letter was attached to a cover letter dated December 29, 2009, from the defendants' counsel to counsel for Rice. The cover letter stated, in part:

> Under West Virginia law Stella–Jones' unconditional offer of reinstatement has the effect of cutting off Plaintiff's back pay, as of the effective date of the offered reinstatement, and any front pay sought. Accordingly, we intend to ask the Court to exclude all back pay and front pay damages beyond February 1, 2010 and any evidence related to those damages.

---

**7.** Vachon testified at trial that, inasmuch as Rice's former position had been eliminated, the controller position offered "was not the same job."

Rice did not accept the offer of reinstatement. One consideration, expressed by Rice's counsel, was the following: "Mr. Rice is understandably concerned about job security, given the fact that he was fired after 24 years of excellent service and after numerous members of management have said negative things about him under oath."

Prior to trial, the defendants filed a motion in limine to limit Rice's evidence of lost wages, in view of the offer of reinstatement. *See, Dobson v. Eastern Associated Coal Corporation,* 188 W.Va. 17, 24, 422 S.E.2d 494, 501 (1992) (Although not feasible in all cases, reinstatement is the preferred remedy.). Thus, according to the defendants, Rice's potential lost wages were limited to the period between his termination on March 12, 2009, and February 1, 2010, his proposed starting date. Nevertheless, the circuit court denied the motion in limine, thereby allowing Rice to submit evidence at trial of lost wages, in the form of front pay, beyond February 1, 2010. The court reasoned that whether Rice should have accepted the offer of reinstatement was subject to varying inferences and that, therefore, the question was one for the jury.[8]

As the verdict form suggests, the jury found Rice's rejection of Stella–Jones' offer of reinstatement reasonable and awarded Rice front pay in the amount of $1,991,332.00. The defendants, however, contend that the appropriateness of the offer of reinstatement was a question for the circuit court to resolve and should never have been submitted to the jury. In that regard, the defendants cite *Peters v. Rivers Edge Mining, Inc.,* 224 W.Va. 160, 182, 680 S.E.2d 791, 813 (2009), for the proposition that whether the facts of a particular case warrant an award of front pay in lieu of reinstatement "is a decision committed to the circuit court." 224 W.Va. at 182, 680 S.E.2d at 813. The defendants assert that, as the preferred remedy, their offer of reinstatement was unconditional, and

should have precluded wage loss damages beyond February 1, 2010.

The defendants' reading of *Peters,* however, is out of context. The opinion in *Peters* reaffirmed the principle that a circuit court *may* make a *preliminary* ruling on the appropriateness of the remedy of reinstatement versus front pay, and its decision in that regard will be reviewed under an abuse of discretion standard. 224 W.Va. at 180–82, 680 S.E.2d at 811–13 It is consistent to conclude, therefore, that where the facts and inferences are in conflict, the matter is for the jury. In this action, we reaffirm *Peters* and hold that in a wrongful discharge action filed in circuit court alleging a violation of The West Virginia Human Rights Act, *W.Va. Code,* 5–11–1 [1967], *et seq.,* the circuit court may submit the question of reinstatement to employment versus an award of front pay to the jury, where the facts and inferences concerning those remedies are in conflict.

In syllabus point 4 of *Voorhees v. Guyan Machinery Company,* 191 W.Va. 450, 446 S.E.2d 672 (1994), this Court observed: "If anything has occurred to render further association between the parties offensive or degrading to the employee, an offer of further employment by the employer will not diminish the employee's recovery if the offer is not accepted." Rice testified as follows during the trial:

I had people in power there, my superiors, that went on sworn testimony in depositions that said very negative things about me. I had a fiduciary responsibility to Burke–Parsons–Bowlby and Stella–Jones, there was a level of trust there, and the level of trust had been broken at that point.

In denying the defendants' motion for a new trial, the circuit court stated that "the jury found that further association between the parties would be offensive to the plaintiff and would reasonably justify plaintiff's refusal to accept any offer of reinstatement."

8. The jury was instructed:
   If you find by a preponderance of the evidence that the defendants made plaintiff an unconditional offer of reinstatement, and that plaintiff did not accept it, unless you find that there were special circumstances to reasonably justify plaintiff's failure to accept the unconditional offer of reinstatement, you cannot consider or award plaintiff any back pay or front pay damages beyond the date when plaintiff would have been reemployed.

This Court concludes that the circuit court's decision to submit the issues surrounding the offer of reinstatement, and Rice's claim for back pay and front pay, to the jury was within the court's sound discretion. Consequently, this assignment of error is without merit.

## C.

### Unmitigated Damages

█ The final assignment of error concerns the defendants' assertion that the jury award of unmitigated back pay and front pay constituted a *de facto* finding of punitive damages, without the due process constraints ordinarily associated with punitive damage awards, and that a new trial should have been granted on that basis.[9]

During the instruction phase of the trial, the jury was told that Rice had a duty to mitigate his damages. As a caveat, however, the jury was also instructed as follows:

> If you find that the defendants discharged the plaintiff on the basis of his age, and if you further find that defendants' actions were malicious, then the plaintiff has no duty to mitigate damages. Accordingly, if defendants' discharge of plaintiff was malicious, you do not have to subtract the sums the plaintiff received from employment after being terminated by the defendants from any amount of back pay award. Further if defendants' discharge of plaintiff was malicious, you do not have to subtract the sums the plaintiff expects to receive in the future from any amount of front pay award.

█ That instruction, concerning malicious discharge, derives from *Mason County Board of Education v. State Superintendent of Schools,* 170 W.Va. 632, 295 S.E.2d 719 (1982). Syllabus point 2 of *Mason County* holds:

> Unless a wrongful discharge is malicious, the wrongfully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could have received at comparable employment where it is locally available, will be deducted from any back pay award; however, the burden of raising the issue of mitigation is on the employer.

Syl. pt. 10, *Maxey v. McDowell County Board of Education,* 212 W.Va. 668, 575 S.E.2d 278 (2002).

The jury was further instructed that "double recovery of damages is not permitted" and that, whereas compensatory damages are awarded for pecuniary loss and recompense for injuries suffered, punitive damages serve the function of punishment and deterrence.

Moreover, although the element of malice appeared in both the instruction concerning whether Rice had a duty to mitigate his damages and the instructions on punitive damages, malice in the instructions on punitive damages, by contrast, was associated, more generally, with a disregard of the rights of others and an indifference to civil obligations.

As reflected on the verdict form, the jury awarded Rice no punitive damages. The compensatory damages awarded consisted of back pay and front pay only; no compensatory damages were returned for aggravation, inconvenience, humiliation, embarrassment or loss of dignity.

In this action, therefore, the defendants' identification of punitive damages with Rice's compensatory award is like comparing apples to oranges. The compensatory award was grounded upon an exception to the duty to mitigate. The evidence supports Rice's 24 year exemplary work record. After training

---

9. As made clear in *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), a jury's consideration and award of punitive damages is highly scrutinized. Syllabus point 2 of *Garnes* observes:

> Under our system for an award and review of punitive damages awards, there must be:

> (1) a reasonable constraint on jury discretion; (2) a meaningful and adequate review by the trial court using well-established principles; and (3) a meaningful and adequate appellate review, which may occur when an application is made for an appeal.

Stover, a recently hired younger employee, Rice was terminated without notice, given little explanation as to the reason and told to vacate the premises that day. The amount awarded by the jury in wages was based on expert testimony. Upon determining that the actions of the defendants were malicious, Rice's duty to mitigate was eliminated, under *Mason County*, and Rice's post-termination income and reasonably expected income were not to be considered. Stated otherwise, the element of malice reflected in the verdict merely affected the level of Rice's compensatory damages.[10]

All those factors are personal to Rice and do not fall into the more broadly based category of punitive damages. Consequently, this Court is of the opinion that, in denying the motion for a new trial, the circuit court correctly rejected the defendants' assertion that the back pay and front pay awards constituted a *de facto* award of punitive damages. This assignment of error, therefore, is without merit.

## V.

### Conclusion

For the reasons stated above, the January 12, 2011, order of the Circuit Court of Jackson County denying the defendants' motion for a new trial is affirmed.

Affirmed.

BENJAMIN, Justice, concurring.

I concur in the Court's judgment which affirms the finding that petitioner engaged in age-related discrimination against the respondent, Jerold John Rice, Jr., in violation of the West Virginia Human Rights Act. I

also concur on the issue of the jury's award of unmitigated *back pay* damages because the award is supported by our jurisprudence and the facts of the case. However, I dissent to the award of unmitigated *front pay* damages because this is unsupported by our jurisprudence. Furthermore, damages awarded in excess of that which compensates a plaintiff for actual loss based upon a finding that the defendant engaged in malicious conduct toward the plaintiff are, by their very nature, punitive. Therefore, for such damage awards, the jurisprudence of this Court related to the reasonableness of a punitive damages award should apply.[1]

In the instant case, the jury was instructed at trial, based on *Mason County Board of Education v. State Superintendent of Schools*, 170 W.Va. 632, 295 S.E.2d 719 (1982), that if it found Burke–Parsons–Bowlby Corporation ("BPB") acted maliciously in discriminating against Mr. Rice, then Mr. Rice had no duty to mitigate his damages.[2] The jury was also instructed that it was not required to reduce an award of back pay *or front pay* damages by any earnings and benefits that Mr. Rice had received or would have reasonably earned. Syllabus Point 2 of *Mason County Board of Education* provides the following:

> Unless a wrongful discharge is malicious, a wrongfully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could have received at comparable employment where it is locally available, will be deducted from any *back pay award;* however, the burden of raising the issue of mitigation is on the employer.

---

**10.** *See, Peters, supra,* 224 W.Va. at 181, 680 S.E.2d at 812 (recognizing that front pay can be an acceptable substitute for reinstatement).

**1.** In addition, as a matter of legal principle, I do not believe that a plaintiff should, in theory, be permitted to receive both an unmitigated pay award in excess of that which fully compensates the plaintiff for his or her actual loss and a punitive damages award based upon the same malicious conduct.

**2.** BPB alleges that in this case, based on its finding that it acted maliciously, the jury was permitted to award Mr. Rice $142,659 in back

pay damages and $1,991,332.00 in front pay damages, without consideration of any offset based on Mr. Rice's actual income from his new employment or his reasonably expected future earnings. The jury was not required to consider Mr. Rice's actual employment with Johnson Insurance and his actual income of over $40,000 annually, not including the benefits to which he was entitled. BPB alleges that the jury's award of almost twenty years of front pay goes far beyond the purpose of compensatory damages, making Mr. Rice whole for his actual or reasonably expected losses as a result of BPB's conduct, and is tantamount to punitive damages.

170 W.Va. 632, 295 S.E.2d 719 (emphasis added). This malicious discharge exception first articulated in *Mason County* has been reaffirmed as the law in West Virginia on other occasions since. *See* Syl. Pt. 7, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983); Syl. Pt. 3, *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990); *Seymour v. Pendleton Community Care*, 209 W.Va. 468, 472–73, 549 S.E.2d 662, 666–67 (2001)(per curiam); *Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 184, 680 S.E.2d 791, 815 (2009). However, despite some *dicta* to the contrary, this Court has never, by syllabus point, extended the *Mason County* holding beyond back pay. Here, the Majority relies entirely on *Mason County* for its finding that there was no duty to mitigate front pay despite *Mason County's* express limitation to back pay awards. This leap of law, without more, is improper.

The Majority opinion states that "the defendant's identification of punitive damages

with Rice's compensatory award is like comparing apples and oranges." I disagree. An award of damages in excess of that appropriate to fully compensate the plaintiff for the plaintiff's actual loss based upon the defendant's malicious conduct is a punitive damages award. I cannot believe that there can be reasonable disagreement on this.

The goal of punitive damages is deterrence. The rationale in *Mason County* for allowing unmitigated back pay awards in cases involving malicious conduct was "to discourage malicious discharges." 170 W.Va. at 638, 295 S.E.2d at 725. To the extent that the goal in allowing an unmitigated damages award is to deter malicious discharges, such an award is in fact punitive, rather than compensatory, in nature. Such an award being punitive, rather than compensatory, in nature, the jury should, as a matter of due process, be required to consider the *Garnes/TXO* factors for assessing whether punitive damages are excessive.[3] Applying a *Garnes/*

---

**3.** This Court has held that when deciding whether to award punitive damages, a jury must consider several factors:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.

(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5) The financial position of the defendant is relevant.
Syl. Pt 3, *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656,186 W.Va. 656, 413 S.E.2d 897 (1991). We also enumerated additional criteria a trial court should consider when evaluating the correctness of a jury's award of punitive damages:

When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:

(1) The costs of the litigation;

(2) Any criminal sanctions imposed on the defendant for his conduct;

(3) Any other civil actions against the same defendant, based on the same conduct; and

(4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.

Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the sound discretion of the trial court, any of the above factors may also be presented to the jury.

*TXO* analysis to these types of unmitigated damage awards would assure that these types of awards are reasonably based and meet the requirements of due process. Where such an award is based on expert economic testimony, like in the instant case, and the damages projected are found to be rationally based and not simply plucked from thin air, a reviewing court may still find an unmitigated damages award based upon malicious conduct to be reasonable.

For these reasons, I respectfully concur with and dissent to the Majority opinion.

Syl. Pt. 4, *Garnes*, 186 W.Va. 656, 413 S.E.2d 897.

The Due Process Clause requires a jury to measure the entitlement to punitive damages by the amounts of harm suffered and prohibits "grossly excessive or arbitrary punishments." See *Perrine v. E.I. Du Pont De Nemours and Co.*, 225 W.Va. 482, 694 S.E.2d 815, 2010 WL 1170661 (W.Va.2010), citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). West Virginia's "punitive damages jurisprudence includes a two-step paradigm: first, a determination of whether the conduct of an actor toward another person entitles that person to a punitive damage award under *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895); second, if a punitive damage award is justified, then a review is mandated to determine if the punitive damage award is excessive under *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991)." See Syl. Pt. 7, *Alkire v. First Nat. Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996). The court must also examine the amount of the award under the compensatory/punitive damage ratio established in *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992).